IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 2

| | |
|---|---|
| SARAH B. CONNER, individually and on behalf of all others similarly situated, ) ) ) ) ) | |
| **Plaintiff**, ) ) ) | |
| v. ) ) ) | MEMORANDUM AND RECOMMENDATION |
| CLEVELAND COUNTY, NORTH CAROLINA also known as Cleveland County Emergency Medical Services, ) ) ) ) ) ) | |
| **Defendant**. ) ) | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 40)[1], which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the Motion, the parties' submissions, and applicable authorities, and for the reasons discussed below, the undersigned respectfully recommends that the Motion be granted.

## I. Relevant Procedural Background

Plaintiff Sarah B. Conner ("Conner") filed this action on January 2, 2018, naming Cleveland County Emergency Medical Services as the sole defendant.

---

[1] As discussed below, the Motion should be deemed a motion for judgment on the pleadings.

(Doc. 1). Plaintiff's original Complaint contained claims for violations of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act.

On January 30, 2018, Cleveland County ("County") filed its Answer and Affirmative Defenses (Doc. 3).[2]

An Initial Scheduling Order was entered by the District Court on March 2, 2018 (Doc. 9).

On March 14, 2018, Conner filed a motion seeking leave to amend her Complaint. The motion was denied as being in violation of the Local Rules. (Docs. 11, 12).

On April 2, 2018, the parties stipulated to the dismissal of Conner's North Carolina Wage and Hour Act claim. (Doc. 14)

On May 1, 2018, Conner filed a renewed motion for leave to amend along with a supporting memorandum. (Docs. 15, 16). Specifically, Conner sought to amend her original Complaint to name the County as the correct defendant and to add a claim for breach of contract under North Carolina law. The County responded (Doc. 19), and Conner replied (Doc. 20). Conner's motion was allowed by Order filed on June 1, 2018 (Doc. 21).

On June 5, 2018, Conner filed her First Amended Class/Collective Action

---

[2] The County answered as Cleveland County Emergency Medical Services was not a distinct legal entity.

Complaint ("Amended Complaint") (Doc. 22).

The County answered (Doc. 27) on July 2, 2018.

On July 27, 2018, the District Court entered an Amended Pretrial Order and Case Management Plan (Doc. 30). On October 10, 2018, on the parties' joint motion, certain pre-trial deadlines were extended. See (Doc. 34).

On December 21, 2018, the County filed the instant Motion to Dismiss (Doc. 40), along with a supporting memorandum (Doc. 41). Conner responded (Docs. 43, 44), and the County replied (Doc. 47).

## II. Relevant Factual Background

Conner's Amended Complaint alleges as follows:

Cleveland County Emergency Medical Services ("CCEMS") is a branch of Cleveland County local government and provides emergency and nonemergency services to sick and injured persons. Amended Complaint ¶¶ 16, 20 – 21.

Full-time EMS personnel work on a 21-day repeating schedule that consists of 24-hour shifts followed by 48-hours off. The workweek begins at 7 AM each Thursday and ends the following Thursday at 6:59 AM. Id. ¶¶ 22 – 25.

The County has adopted a "pay plan" that establishes salary grades, and steps within grades, for full-time county personnel, including EMS personnel ("County Pay Plan"). Id. ¶¶ 28 – 29.

3

Prior to January 1, 2018, the County did not pay full-time EMS personnel regular wages during each semi-monthly pay cycle that were equal to 1/24 of their annual salaries in accordance with the County Pay Plan. Id. ¶ 45.

Instead, full-time EMS personnel were paid pursuant to a separate pay plan appearing in the CCEMS Standard Operating Guidelines entitled the "Section 14 – Pay Plan". Id. ¶ 44.

### III. Legal Standard

The County answered Conner's Amended Complaint in July 2018 and subsequently filed the instant Motion in December 2018. Consequently, and as the County acknowledges, the Motion should be considered as being a motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure. See Memorandum of Law in Support of County's Motion to Dismiss (Doc. 41) at 7. The standards for analyzing such motions are the same as those used for motions made under Rule 12(b)(6). See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

The central issue in a motion to dismiss made pursuant to Rule 12(b)(6) is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). That is, while "detailed factual allegations" are not required, a claim must contain sufficient factual allegations to support the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193.

In conducting this analysis, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Consumeraffairs.com, 591 F.3d at 253; Giacomelli, 588 F.3d at 192. The court, however, is not required to accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. Rule 8 of the Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.

IV. Discussion

### A. Effect of Conner's Prior Motion to Amend

An initial question is whether the allowance of Conner's previous motion to amend determines the fate of the County's current Motion. In particular, Conner contends that the arguments now raised by the County were made previously in response to Conner's motion to amend and rejected by the Court.[3] Consequently, Conner reasons, those issues have been decided in her favor such that the County's Motion is tantamount to "an improper motion for reconsideration." Pl.'s Oppos. (Doc. 43) at 2 – 4. The County argues to the contrary that the Court's previous allowance of Conner's motion to amend pursuant to Rule 15 does not preclude the Court from considering the County's current Motion. Def.'s Reply (Doc. 47) at 2 – 6.

A district court is justified in denying a motion to amend on futility grounds where the proposed amendment cannot withstand a motion to dismiss. Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995); see also Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (court "may deny" a motion to amend due to prejudice, bad faith, or futility). However, it does not necessarily follow that a court's decision to allow a motion to amend prohibits consideration of a motion to dismiss that may later be filed,

---

[3] The County argued that Conner should not be allowed to assert a claim for breach of contract as such a claim would be futile. The County made a similar argument with respect to Conner's FLSA claim, though the County had not previously challenged that claim by way of a motion to dismiss.

particularly as it is the Fourth Circuit's "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." Galustian v. Peter, 591 F.3d 724, 729 (4th Cir. 2010).

Therefore, the undersigned is not persuaded that the previous ruling on Conner's motion to amend forecloses consideration of the County's Motion.

### B. Fair Labor Standards Act Claim

The pleading requirements established by the Fourth Circuit for FLSA claims are set forth in Hall v. DIRECTV, LLC, 846 F.3d 757 (4th Cir. 2017). There, the court discussed varying standards that had developed, noting that some courts had required plaintiffs "to provide an approximation of the number of hours for which they were inadequately compensated to state a plausible overtime claim," while others required plaintiffs only to "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Id. at 776.

The Fourth Circuit adopted the latter, which it called "a more lenient approach," and held as follows:

> Thus, to make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked
>
> more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours.

7

Id. at 777.

The court went on to explain that while plaintiffs must "do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay," plaintiffs are not required "to identify a *particular* week in which they worked uncompensated overtime hours." Id. (emphasis in original). Instead, plaintiffs should "provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" Id. A plaintiff can meet this standard "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility." Id. (emphasis in original).

In the instant case, the parties vigorously dispute how this standard should be applied to Conner's Amended Complaint. The County argues that Conner has failed to plead affirmatively that she worked more than 40 hours in a given week and to provide information regarding the overtime payments she alleges she should have received, while Conner argues that she has adequately pled an overtime claim.

Conner's Amended Complaint alleges that full-time EMS personnel work a 21-day repeating schedule comprised of a 24-hour shift followed by 48 hours off (¶ 24). Conner alleges that she and other similarly-situated current and former full-time EMS personnel worked this schedule. (¶ 59); Consent to

8

Become Party Plaintiff ("I worked the 24 hours on – 48 hours off schedule during one or more work weeks of my employment.") Am. Compl. (Doc. 22) at 16.

Though Conner's allegations regarding the number of hours she worked are sparse, they are sufficient. Conner is not required to identify a particular week she worked in excess of 40 hours, but rather to "provide sufficient factual allegations to support a reasonable inference that . . . she worked more than forty hours in at least one workweek." Hall, 846 F.3d at 777. Her description of the 21-day schedule and her allegation that she and others worked according to it by definition indicate that Conner worked more than 40 hours per week every week.

However, the Hall standard also requires a plaintiff to provide sufficient factual allegations to support a reasonable inference that her employer failed to pay the requisite overtime premium for her overtime hours. Id. Conner's claim is lacking in this regard.

Conner acknowledges that she "does not allege the usual claim for unpaid and paid overtime where employees seek overtime pay for work performed 'off the clock.'" Pl.'s Oppos. (Doc. 43) at 12. Rather, Conner contends that she had a contractual right to be paid pursuant to the County Pay Plan but instead was paid pursuant to the Section 14 – Pay Plan, and that this practice resulted in two problems—a breach of the County's contract with

9

Conner and, simultaneously, a violation of the FLSA.

Specifically as to the first, Conner argues that the County stopped paying her straight time before she had received all of the straight time due to her; she alleges that she earned $1537.50 in straight time per pay cycle but only received $1092.00 of straight time each pay cycle. Am. Compl. (Doc. 22) ¶ 46.

As to the alleged FLSA violation, Conner argues that the next payments to her (following the partial straight time) were improperly classified as "overtime," though they could not be "overtime" since she had not yet received all of her straight time. See Pl.'s Oppos. (Doc. 43) at 14 ("Conner alleges that Defendant violated the FLSA by improperly designating compensation paid to Conner . . . for hours worked in excess of 40 as 'overtime pay,' without first paying all straight – time wages.").

Missing, however, is a description of how, through this misclassification, the County "failed to pay the requisite overtime premium for those overtime hours." Hall, 846 F.3d at 777. While the Amended Complaint contains conclusory statements to this effect, supporting factual allegations are not provided. In addition, Conner's overall theory is at odds with those conclusory statements.

The example appearing in Conner's Opposition illustrates the point.

> By way of example, assume that under the Cleveland County Code of Ordinances Conner's salary is $1,500 each workweek (i.e., straight-time wages), plus overtime. Assume further that in a given workweek, Conner earned $750 in overtime pay. Finally, assume Defendant then issues Conner a paycheck in the amount of $1,750, with a paystub that designates payment of $1,000 as "salary" and $750 as "overtime compensation." In this scenario, there is both a breach of contract and a violation of the FLSA. The breach of contract is the failure to pay all of Conner's wages, including her full salary. The FLSA violation is the improper designation of $750 as "overtime pay," without first having paid all straight-time wages.

Pl.'s Oppos. (Doc. 43) at 14-15.

The overtime payment of $750 was made in its entirety; the unpaid funds represent the alleged remainder of her straight time, not additional overtime. As Conner says, "[t]he FLSA violation arises solely from Defendant's failure to pay all straight time wages each pay period, prior to paying 'overtime compensation.'" Id. at 15.

Conner's FLSA claim is brought pursuant to 29 U.S.C. § 216(b), which states that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." However, Conner's Amended Complaint does not include factual allegations sufficient to support an inference that the County has failed to pay Conner the appropriate amount of overtime. The

11

undersigned will therefore recommend dismissal of Conner's FLSA claim.

### C. Breach of Contract Claim

Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."

In the instant case, Conner's FLSA claim creates the basis for federal jurisdiction over this action. If this claim is dismissed as recommended, that basis will be gone, leaving only Conner's contract claim under North Carolina law. Consequently, the undersigned will recommend that the District Court decline to exercise supplemental jurisdiction over Conner's remaining claim for breach of contract and that such claim be dismissed without prejudice.

In the alternative, if Conner's FLSA claim is not dismissed and original federal question jurisdiction remains in place, the undersigned will recommend that the County's Motion be denied as to Conner's breach of contract claim.

The County first argues that dismissal of Conner's contract claim is in order because the Amended Complaint does not include an affirmative allegation that the County has waived its sovereign immunity. Def.'s Mem. (Doc. 41) at 18-21. To overcome the defense of sovereign immunity, a plaintiff's complaint must include an affirmative allegation that immunity has been waived. Fabrikant v. Currituck Cty., 621 S.E.2d 19, 25 (N.C. Ct. App. 2005)

12

(quoting Paquette v. Cty. of Durham, 573 S.E.2d 715, 717 (N.C. Ct. App. 2002) (internal citations omitted)). However, North Carolina appellate courts have held that where, as here, a plaintiff's claim sounds in contract, an affirmative waiver allegation is not needed, since sovereign immunity is not available as a defense against contract claims. Wray v. City of Greensboro, 802 S.E.2d 894, 899 (N.C. 2017) (citations omitted).

The County also argues that Conner has not sufficiently alleged the existence of a valid contract between herself and the County. Def.'s Mem. (Doc. 41) at 21-25. Though Conner's allegations are not detailed, Conner has nonetheless provided information about the County Pay Plan, the County's alleged breach of it, the Section 14-Pay Plan[4], and the unpaid wages she claims to be owed.

---

[4] The County argues that a copy of the Section 14-Pay Plan, which Conner attached to her opposition to the Motion and her counsel represents was produced by the County, should not be considered. While matters beyond the pleadings are generally not considered in the context of a Rule 12(b)(6) motion, documents attached to the complaint or the motion to dismiss may be considered "if they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). Similarly, "[d]ocuments that plaintiffs attach to their response to a defendant's motion to dismiss are not considered when those documents were not explicitly relied upon or referenced in the complaint." Aloi v. Moroso Inv. Partners, LLC, No. CIV.A. DKC 11-2591, 2012 WL 4341741, at *5 (D. Md. Sept. 20, 2012) (citing Braun v. Maynard, 652 F.3d 557, 559 n. 1 (4th Cir. 2011)). Here, the Section 14-Pay Plan is integral to Conner's claims. Further, though the County argues the document is not a public record, the County has not objected to the document's authenticity or Plaintiff counsel's representation that it was produced by the County.

13

Such a claim is recognized by North Carolina law. See <u>Archer v. Rockingham Cty.</u>, 548 S.E.2d 788, 792-93 (N.C. Ct. App. 2001) (agreeing with assertion by former and current emergency medical technicians that their employment arrangement with county was contractual in nature, although the contract was implied); <u>Paquette</u>, 573 S.E.2d at 718 ("The relationship of employer and employee is essentially contractual in its nature, and should be determined by the rules governing the establishment of contracts, express or implied."); <u>Stellar Ins. Grp., Inc. v. Cent. Companies, LLC</u>, No. 2:06CV11, 2006 WL 2862218, at *7 (W.D.N.C. Sept. 12, 2006), report and recommendation adopted, 2006 WL 2862214 (Oct. 3, 2006) ("The North Carolina courts have specifically held that even where an employee was 'at will,' a "[p]laintiff's claim for unpaid wages is contractual, rather than tortious, in nature.") (citations omitted).

### V. Recommendation

Based on the foregoing, the undersigned respectfully RECOMMENDS:

1. That Defendant's Motion to Dismiss (construed as a Motion for Judgment on the Pleadings) (Doc. 40) be GRANTED;

2. That Plaintiff's FLSA claim be DISMISSED; and

3. That the District Court decline to exercise supplemental jurisdiction over Plaintiff's breach of contract claim and that such claim be DISMISSED WITHOUT PREJUDICE.

14

In the alternative, if Plaintiff's FLSA claim is not dismissed, the undersigned recommends that Defendant's Motion as to Plaintiff's breach of contract claim be DENIED.

Signed: June 27, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).