**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 19-2012**

———————

SARA B. CONNER, individually and on behalf of all others similarly situated,

        Plaintiff - Appellant,

v.

CLEVELAND COUNTY, NORTH CAROLINA a/k/a Cleveland County Emergency Medical Services,

        Defendant - Appellee.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:18-cv-00002-MR-WCM)

———————

Argued:  September 22, 2021                Decided:  January 5, 2021

———————

Before WILKINSON and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Vacated and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Wilkinson and Senior Judge Floyd joined.

———————

**ARGUED:**  Philip J. Gibbons, Jr., GIBBONS LAW GROUP, PLLC, Charlotte, North Carolina, for Appellant.  Christopher S. Edwards, WARD AND SMITH, PA, Wilmington, North Carolina, for Appellee.  **ON BRIEF:**  Craig L. Leis, GIBBONS LEIS, PLLC, Charlotte, North Carolina, for Appellant.  Alexander C. Dale, Grant B. Osborne, WARD

AND SMITH, PA, Wilmington, North Carolina, for Appellee.

———————————

2

WYNN, Circuit Judge:

Plaintiff Sara Conner appeals from the district court's order granting judgment on the pleadings to her employer, the Cleveland County Emergency Medical Services ("Cleveland Emergency Services"), which is a department of Defendant Cleveland County, North Carolina. Conner's complaint alleged that Cleveland County underpaid her for straight (i.e., non-overtime) hours worked during weeks in which she also worked overtime.

At issue is whether this alleged underpayment is a violation of the overtime provision of the Fair Labor Standards Act, under the theory of "overtime gap time." After careful review, we hold that the district court dismissed the suit based on a misreading of our opinion in *Monahan v. County of Chesterfield*, 95 F.3d 1263 (4th Cir. 1996). Under the correct standard articulated hereinafter, Conner adequately alleged a Fair Labor Standards Act claim. Accordingly, we vacate and remand for further proceedings.

## I.

We apply the same standard for Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings as for motions made pursuant to Rule 12(b)(6). *See Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). As such, we recount the facts as alleged by Plaintiff, accepting them as true and drawing all reasonable inferences in Plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

3

A.

For at least three years preceding the filing of her complaint in 2018, Conner worked as an emergency medical services ("EMS") employee for Cleveland Emergency Services. Pursuant to its Standard Operating Guideline, Cleveland Emergency Services assigns EMS personnel such as Conner to a 21-day repeating schedule in which each employee works a 24-hour shift followed by 48 hours off (the "24 on/48 off schedule"). The Standard Operating Guideline refers to personnel who work this schedule as "full-time EMS personnel." J.A. 9.[1] Individuals working the 24 on/48 off schedule will always work more than 40 hours per week, since they will have at least two (and sometimes three) 24-hour shifts each week. *See* Reply Br. at 20 n.9 (providing an example of the 24 on/48 off 21-day schedule).

For the three-year period preceding the complaint, Cleveland County paid Conner under two pay plans. The first is the pay plan for county personnel administered by the county manager set forth in the Cleveland County Code of Ordinances (the "Ordinances"). The Ordinances establish salary "grades" for all full-time county employees and lay out "steps" within each grade. J.A. 10. All Cleveland Emergency Services full-time EMS personnel, like Conner, are paid on a semimonthly basis pursuant to the Ordinances. Each payment constitutes 1/24 of an employee's annual salary as specified by that employee's grade and step. Conner alleges the Ordinances constitute the valid employment agreement between herself and Cleveland County.

---

[1] Citations to the "J.A." or "Supp. J.A." refer, respectively, to the Joint Appendix and Supplemental Joint Appendix filed by the parties in this appeal.

4

In addition to the Ordinances, EMS personnel are subject to "policies and procedures for . . . payment of wages and overtime" administered by Cleveland Emergency Services as set forth in its Standard Operating Guideline "Section 14-Pay Plan" (the "Plan"). J.A. 12. As the "pay plan for overtime," the Plan provides the calculation method for determining the overtime rate for 24 on/48 off EMS personnel. Supp. J.A. 1. First, the employee's regular hourly pay rate is determined by dividing the employee's annual salary by 2,928 hours (the number of hours actually worked per year based on the 24 on/48 off schedule). Supp. J.A. 1 ¶ a(iii). Then, to determine the overtime rate, Cleveland Emergency Services multiplies the resultant hourly rate by 1.5. *Id.* Conner does not take issue with this aspect of the Plan.

In addition to the overtime rate, however, the Plan provides a "revised semi-monthly rate" for regular wages.[2] *Id.* ¶ (a)(iv). The semimonthly pay is determined by multiplying the hourly rate that was used to calculate overtime by 2,080 (representing 40 non-overtime hours per week worked for 52 weeks), and then dividing this number by 24. *Id.* The resulting number is paid to the employee each pay period. When an employee has worked overtime during a particular pay period, Cleveland Emergency Services will take the amount to be paid for overtime hours (calculated as described above) and add it to the revised semimonthly wages to be paid for that pay period. *Id.* ¶ (b).

Conner alleges that this "revised semi-monthly rate" unlawfully pays her regular wages using overtime compensation, resulting in overall lower pay. According to Conner,

---

[2] The terms "regular" or "straight time" wages or compensation refer to wages for non-overtime hours. The terms are used interchangeably throughout this opinion.

her annual salary established under the Ordinances represents her compensation for regular wages. Thus, she claims that for each semimonthly pay period, she should be paid regular wages—calculated as her salary established by the Ordinances divided by 24—plus any overtime as calculated under the Plan.

It is helpful to consider an example of how Conner would calculate her compensation due under the Ordinances and the Plan. Federal law mandates that employers pay employees a premium hourly rate for each hour worked in excess of forty hours per week, which works out to 2,080 hours per year (40 x 52). 29 U.S.C. § 207(a)(1). The Plan notes that the actual number of hours worked annually in a 24 on/48 off schedule is 2,928 hours. That means that employees on the 24 on/48 off schedule work 848 hours overtime in a given year. Using the calculation method provided in the Plan, Conner's hourly rate in 2017 was $12.60 (an annual salary of $36,900 divided by 2,928 hours). Accordingly, the hourly rate for overtime was $18.90 ($12.60 x 1.5). Multiplying 848 overtime hours by the overtime rate of $18.90 an hour should therefore have resulted in an additional $16,027.20 in compensation for Conner in 2017, which, combined with her regular wages of $36,900, would have meant her total compensation was to be $52,927.20.

Yet Conner alleges that she did not receive this amount of compensation under the Plan's "revised semi-monthly rate." She alleges that instead the Plan cut her annual salary for regular wages from $36,900 (the amount established in the Ordinances) to $26,208 (the hourly rate, $12.60, multiplied by the annual hours for a 40-hour workweek, 2,080). As such, Conner alleges that Cleveland County unlawfully used her overtime wages to fill the

"gap" between her straight-time compensation under the Plan—$26,208—and her full salary—$36,900.

In this example, Conner's total 2017 salary as calculated under the Plan would be reduced to $42,235.20 ($26,208 for regular time plus $16,027.20 for the 848 hours of overtime we assume for purposes of this example).[3] Because Conner alleges her actual total salary should be $52,927.20 (assuming 848 hours of overtime), she claims she is missing out on at least $10,692 of compensation in a given year.

At some point afterwards, Cleveland County changed its policy, effective January 1, 2018, to "beg[i]n paying [Cleveland Emergency Services] full-time EMS personnel regular wages in an amount equal to 1/24 of their annual salaries as designated by their corresponding salary grade and step" in the Ordinances. J.A. 14. Conner alleges, however, that Cleveland County should have paid EMS personnel in the same manner for the three years prior to January 1, 2018.

### B.

In June 2018, Conner filed an amended complaint bringing a putative class action. She alleged that Cleveland County violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by underpaying straight time wages. She

---

[3] We note an oddity created by Cleveland County's interpretation: $36,900 is not, in fact, the *annual* salary—because, with overtime, EMS workers on the 24 on/48 off schedule will receive *greater* than that amount in wages over the course of the year—but rather is just a number used to calculate the applicable hourly wage for both straight time and overtime. Of course, the parties can contract to calculate wages in this way, subject to minimum wage provisions. Whether they have done so here is, as discussed below, a question for the district court to consider in the first instance on remand.

7

claimed that, under the FLSA, an employer cannot classify wages as overtime without first paying *all* straight time wages due to an employee. Conner also asserted that Cleveland County breached its contract with its EMS personnel under North Carolina law by failing to pay them their full annual salaries as designated by their respective grades and steps.

Conner sought to first bring her claim as a collective action under the FLSA, defining the class as "[a]ll current and former full-time EMS personnel who were employed during the period [of] January 2, 2015 through January 1, 2018," which she estimated to be between 50 and 75 people. J.A. 14–15. Conner sought to bring her breach-of-contract action as a class action under Federal Rule of Civil Procedure 23, defining the class as "[a]ll current and former full-time EMS personnel who were employed during the period [of] January 2, 2016[4] through January 1, 2018." J.A. 15–18.

Cleveland County moved to dismiss Conner's complaint under Rule 12(b)(6) or, alternatively, for judgment on the pleadings under Rule 12(c). Cleveland County argued that Conner failed to affirmatively plead that she worked more than 40 hours in a given workweek such that she was entitled to overtime pay under the FLSA. Cleveland County also argued that Conner's breach-of-contract claim should be dismissed because Conner failed to plead that Cleveland County had waived its governmental immunity from suit,

---

[4] The amended complaint begins the class period at 2015 for the FLSA claim but at 2016 for the contract claim. However, the complaint also makes multiple references to the "three-year period preceding" its filing, and the original complaint was filed on January 2, 2018. J.A. 6, 7. As such, it is possible the reference to 2016 is a typographical error. In any event, that detail is of no moment to this appeal, and we leave it for the parties and the district court to clarify on remand as needed.

and that Conner also failed to plead the existence of a valid contract to state a breach-of-contract claim.

Conner's claims were first adjudicated by a magistrate judge, who provided a report and recommendation. *Conner v. Cleveland Cnty.*, No. 1:18 CV 2, 2019 WL 5294418, at *1 (W.D.N.C. June 27, 2019), *report and recommendation accepted*, No. 1:18-CV-00002-MR-WCM, 2019 WL 3948365 (W.D.N.C. Aug. 21, 2019). Construing Cleveland County's motion as one for judgment on the pleadings under Rule 12(c), the magistrate judge recommended that the district court grant Cleveland County's motion and dismiss the complaint. *Id.* at *6. The magistrate judge first found that Conner adequately pleaded that she worked more than 40 hours in a workweek. *Id.* at *3.

The magistrate judge concluded, however, that Conner did not adequately plead how Cleveland County failed to pay the requisite overtime wages she was due. *Id.* at *4. The magistrate judge thus recommended that the district court dismiss Conner's FLSA claim and decline to exercise supplemental jurisdiction over Conner's North Carolina breach-of-contract claim. *Id.* at *6. In the alternative, if the district court decided not to dismiss Conner's FLSA claim, the magistrate judge recommended denying Cleveland County's Rule 12(c) motion as to the breach-of-contract claim. *Id.*

In considering the magistrate judge's recommendation and the parties' objections thereto, the district court analyzed Conner's claim under this Court's decision in *Monahan*, 95 F.3d 1263. *Conner v. Cleveland Cnty.*, No. 1:18-CV-00002-MR-WCM, 2019 WL 3948365, at *2–3 (W.D.N.C. Aug. 21, 2019). The court concluded that if the terms of Conner's employment agreement did not violate the minimum wage and overtime

9

provisions of the FLSA and provided compensation for straight time worked up to the overtime threshold, then there could be "no viable claim for [pure] gap time under the FLSA" as long as overtime wages were properly paid. *Id.* at *1–2 (quoting *Monahan*, 95 F.3d at 1273). It noted that Conner had "concede[d]" that all her overtime hours were "properly accounted for and appropriately compensated." *Id.* at *2.

In short, the district court found Conner had not alleged a violation of the FLSA's overtime provisions because she "merely assert[ed] that she and other employees were shorted on their straight time pay pursuant to their contract." *Id.* And because the court found that this amounted to a state-law contract claim, rather than an FLSA claim, the court dismissed Conner's FLSA claim, declined to exercise supplemental jurisdiction over Conner's breach-of-contract claim, and granted Cleveland County's motion for judgment on the pleadings. *Id.* at *2–3. Conner timely appealed.

## II.

We review de novo a district court's order granting a motion for judgment on the pleadings under Rule 12(c), applying the same standard as for motions made pursuant to Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (quoting *Hanover Ins. Co. v. Urban Outfitters, Inc.*, 806 F.3d 761, 764 (3d Cir. 2015)). To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pledger v.*

*Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility" when it shows "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible, the complaint "need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)).

III.

Conner asserts that the district court made two key errors in dismissing her FLSA claim.[5] She argues the district court misinterpreted and misapplied (1) Department of Labor official interpretation 29 C.F.R. § 778.315 and (2) this Court's holding in *Monahan*. Because we conclude that an overtime gap time claim is cognizable under the FLSA, we agree.

A.

We begin with a review of the purposes of the FLSA and the concept of "gap time."

---

[5] Conner also argues that the district court committed reversible error by sua sponte raising an affirmative defense under 29 U.S.C. § 207(k) and relying on that affirmative defense in part to dismiss her FLSA claim. Section 207(k) creates an exemption to the FLSA's overtime laws that increases the number of hours firefighters and other public service employees must work before they are entitled to overtime pay. The parties agree § 207(k) is not applicable here, and we note that the district court did not base its decision to dismiss Conner's FLSA claim solely on § 207(k), *see Conner*, 2019 WL 3948365, at *1–3 (conducting a *Monahan* analysis that would have been unnecessary had the district court dismissed Plaintiff's claim based on § 207(k)). Therefore, we do not address this issue further.

11

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). To accomplish these goals, the FLSA requires employers "to pay their employees both a minimum wage and overtime pay." *Hall*, 846 F.3d at 761.

Specifically, the FLSA requires employers to pay their employees at least the federal minimum wage. 29 U.S.C. § 206(a)(1). And it requires employers to pay not less than time and a half for each hour worked over forty hours during a workweek. *Id.* § 207(a)(1). The FLSA's overtime requirement "was intended 'to spread employment by placing financial pressure on the employer' and 'to compensate employees for the burden of a workweek in excess of the hours fixed in the Act.'" *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015) (quoting *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944)).

There are situations, however, that fall between these two provisions of the FLSA. "In addition to seeking unpaid overtime compensation, employees may seek to recover wages for uncompensated hours worked that 'fall between the minimum wage and the overtime provisions of the FLSA,' otherwise known as 'gap time.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3rd Cir. 2014) (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 (9th Cir. 1999)). Gap time "refers to time that is not [directly] covered by the [FLSA's] overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the [FLSA's] minimum wage provisions because . . . the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Id.* at 243-44 (quoting *Adair*, 185 F.3d at 1062 n.6).

12

There are two types of gap time—pure gap time and overtime gap time. In pure gap time claims, the employee seeks to recover for unpaid straight time in a week in which they worked no overtime. In overtime gap time claims, the employee seeks to recover unpaid straight time for a week in which they *did* work overtime. *See Monahan*, 95 F.3d at 1266.

While direct minimum wage and overtime violations can clearly be addressed by the FLSA, 29 U.S.C. §§ 206–207, no provision of the FLSA explicitly governs employee claims to recover for unpaid gap time. And we have agreed with other courts that "there is no cause of action under the FLSA for *pure* gap time when there is no evidence of a minimum wage or maximum hour violation by the employer." *Monahan*, 95 F.3d at 1280 (emphasis added); *see also Davis*, 765 F.3d at 244 ("Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages—that is, wages for unpaid work during pay periods without overtime."). Rather, a "claim to [pure] gap time compensation is enforceable only under" state law related to the parties' employment agreement. *Monahan*, 95 F.3d at 1283.

To be sure, courts may be united in rejecting pure gap time claims under the FLSA but they are divided on whether an employee can bring an overtime gap time claim for unpaid straight time worked in an overtime week. The FLSA does not include language about overtime gap time, but that does not end our inquiry.

### B.

Indeed, our inquiry continues because given the FLSA's silence regarding overtime gap time, we turn as a "resort for guidance" to the "interpretations and opinions of the [Department of Labor] under [the Fair Labor Standards] Act." *Skidmore v. Swift & Co.*,

13

323 U.S. 134, 140 (1944). Although "[w]e recognize that there is a difference between 'regulations' . . . and official 'interpretations' of the Department of Labor, such as those" at issue here, and that such interpretations and opinions are "not controlling upon the courts by reason of their authority," we nevertheless give "considerable deference" to "the interpretation of a statute by the agency charged with its enforcement." *Monahan*, 95 F.3d at 1272 n.10 (quoting *Watkins v. Cantrell*, 736 F.2d 933, 943 (4th Cir.1984)).

The Department of Labor provides an official interpretation of the FLSA overtime provisions in part 778 of the Code of Federal Regulations, title 29. *See* 29 C.F.R. § 778.1(a) (explaining the intended purpose of the interpretations in part 778 is for use by "courts to understand employers' obligations and employees' rights under the [FLSA]"). Here, we consider the Department's interpretative guidance provided in 29 C.F.R. § 778.315, titled "Payment for all hours worked in overtime workweek is required," which states in full:

> In determining the number of hours for which overtime compensation is due, all hours worked by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. *This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.*

29 C.F.R. § 778.315 (emphasis added). It is evident from this interpretation that "one must first look to the employment agreement to determine whether the employer has first paid all straight time due under the agreement." *Monahan*, 95 F.3d at 1273. Accordingly, an employee must be compensated at the agreed-upon or regular straight-time rate (rather than the statutory minimum wage rate) before any computation for overtime.

14

We give "considerable deference" to the "body of experience and informed judgment" of the Department represented in § 778.315. *Id.* at 1272 n.10 (quoting *Skidmore*, 323 U.S. at 140). In considering "the weight of [this] judgment," we look to "the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140.

The Section 778.315 interpretation was released by the Department in 1968 and has remained unchanged for the past fifty-three years. *Compare* 29 C.F.R. § 778.315 (2021), *with* Overtime Compensation, 33 Fed. Reg. 986, 1003 (Jan. 26, 1968) (to be codified at 29 C.F.R. pt. 778). It is referenced, directly or indirectly, in four other Department interpretations, *see* 29 C.F.R. §§ 778.317, 778.322, 778.403, and 794.142, and the Department has released several administrative decisions adjudicating § 778.315, thereby confirming the continued validity and relevance of this interpretation for the agency, *see, e.g.*, *In the Matter of: Hong Kong Ent. (overseas) Invs., Ltd.*, ARB No. 13-028, 2014 WL 6850013, at *8 (U.S. Dep't of Lab. Nov. 25, 2014) (noting the Department's administrative law judge properly calculated back wages owed by employer pursuant to § 778.315). Further, this interpretation makes sense as it reflects the policy objective of the FLSA overtime provision by ensuring employers do not mitigate or skirt the financial pressures of working their employees above the forty-hour threshold. *See Donovan v. Crisostomo*, 689 F.2d 869, 872, 876 (9th Cir. 1982) (finding a violation of the FLSA's overtime provisions and frustration of its objectives when an employer, in a scheme similar in effect to overtime gap time violations, required its employees to pay a cash "kickback" to the

15

employer during overtime weeks, resulting in a reduction in the employees' regular rate of pay compared to the employment agreement).

For example, assume an employee's salary is $1,500 each work week for straight-time wages, and in a given work week, the employee earns $750 in overtime pay.[6] Instead of issuing the employee a paycheck for $2,250, the employer issues a paycheck in the amount of $1,750. The paystub designates a payment of $1,000 as "salary" and $750 as "overtime compensation." In this scenario, there is a violation of the overtime provisions of the FLSA according to § 778.315 because it is improper to designate $750 as "overtime pay" without first having paid all straight-time wages. Effectively, the employer has only paid the employee $250 in overtime pay out of the $750 owed.

As the example illustrates, § 778.315 clarifies that employers may not invent "creative payment schemes" to shirk their responsibilities under the FLSA. *U.S. Dep't of Lab. v. Fire & Safety Investigation Consulting Servs., LLC*, 915 F.3d 277, 286 (4th Cir. 2019). Without such guidance, an employer can engage in wage theft (e.g., stealing $500 of overtime wages in the example above) while claiming to abide by the letter of the FLSA overtime provision. Such a scheme is contrary to congressional intent, which "was to protect employees from detrimental labor conditions" including "excessive work hours and substandard wages." *Monahan*, 95 F.3d at 1267 (citing *Barrentine*, 450 U.S. at 739).

Section 778.315 is part of a large body of official interpretative guidance from the Department on the FLSA's overtime provisions. For instance, § 778.310 specifies that

---

[6] *See* Opening Br. at 22–23 n.10 (providing a similar example).

lump sum payments for overtime work do not qualify as an overtime premium under the FLSA in some instances, noting that "[i]f the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked," which would "defeat[]" the congressional intent "to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work." 29 C.F.R. § 778.310. Section 778.317 disallows agreements for improper overtime compensation. 29 C.F.R. § 778.317. Further, § 778.322 indirectly references § 778.315 to provide guidance for calculating overtime when an employee's work week is reduced. 29 C.F.R. § 778.322.

Like § 778.315, these sections are long-standing interpretations—they were issued thirty years ago. And this Court has employed, and continues to employ, them as guides for adjudication. *See Monahan*, 95 F.3d at 1270, 1273 (1996) (referencing §§ 778.315, 778.317, and 778.322); *Balducci v. Chesterfield Cnty.*, No. 98-2136, 1999 WL 604040, at *5 (4th Cir. 1999) (unpublished table decision) (referencing § 778.322); *Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 286 (2019) (referencing § 778.310). Rather than acting as a standalone interpretation, § 778.315 is but one piece in the armor of the FLSA as a "remedial statute" to "provide for the general well-being of workers." *Monahan*, 95 F.3d at 1267 (first quoting *Kelley v. Alamo*, 964 F.2d 747, 749–50 (8th Cir. 1992); then citing *Lyon v. Whisman*, 45 F.3d 758, 763 (3d Cir. 1995)).

17

We conclude that the Department's guidance in § 778.315 has significant "power to persuade." *Skidmore*, 323 U.S. at 140. Accordingly, we will follow the Department's guidance and will look to its interpretation of the overtime provision to analyze overtime gap time claims.

### C.

Using the guidance of § 778.315, we acknowledged the viability of overtime gap time claims in *Monahan*, though we found the claim in that case to fail. *See Monahan*, 95 F.3d at 1272–73, 1284. We disagree with Cleveland County that the discussion of overtime gap time claims in *Monahan* was dicta.[7] But to the extent any doubt remains after *Monahan* that overtime gap time claims are cognizable under the FLSA overtime provision, today we explicitly conclude that they are.

In *Monahan*, twelve police officers sued their county for straight time compensation under the FLSA, conceding that the county did not owe them overtime pay and had not paid them less than the minimum wage. *Id.* at 1265–66. The officers sought to recover back pay for hours worked "in the gap," that is, for hours when they "worked more than the regularly scheduled 135 hours, but did not exceed the 147 hour overtime threshold." *Id.* at 1266. They brought two claims, one for "pure gap time" pay for those weeks without overtime, and one for "overtime gap time" pay for uncompensated straight time hours

---

[7] Contrary to Cleveland County's argument, the recognition of overtime gap time claims was not peripheral to our resolution of the officers' overtime gap time claim—it was central to it. Our holding was the culmination of extensive analysis and was critical to reversing the district court's grant of summary judgment to the plaintiff.

worked during weeks when there was overtime. *Id.* The district court granted summary judgment for the plaintiffs on both theories. *Id.*

We reversed, granting summary judgment to the defendants. Regarding the pure gap time claim, we held there was no remedy under the FLSA absent a minimum wage violation or overtime violation. *Id.* at 1280. But regarding the officers' overtime gap time claim, we focused on § 778.315 and asked whether "all straight time compensation due to the employee for nonovertime hours under the express or implied employment agreement or applicable statute ha[d] been paid" for the week when overtime hours were worked. *Id.* at 1273. In other words, an overtime gap time violation is a species of overtime violation: an employee who has not been paid all the straight time she is owed has not been properly paid her overtime.

Reviewing the evidence in the summary-judgment record in *Monahan*, we rejected the officers' overtime gap time claim after determining that the officers' salaries were "intended to compensate them for all hours worked up to the overtime threshold" of 147 hours, such that they had no "gap" of uncompensated labor for hours worked between 135 and 147 hours. *Id.* at 1273. Considering the guidance of § 778.315, then, we concluded that because the officers had been paid their regular wages in accordance with the terms of the employment agreement, their overtime could be considered properly paid, and there was no violation of the FLSA. *Id.* at 1273, 1279. That is, we rejected the officers' overtime gap time claim because it suffered from insufficient *factual*, rather than legal, support. *See Balducci*, 1999 WL 604040, at *3, *7 (applying our holding in *Monahan* to reject the

"identical issue" of police officers' overtime gap time claim based on the terms of the employment agreement).

Notably, in *Monahan*, the plaintiffs claimed there was nonpayment of all straight-time wages for a specified period of time—to wit, the gap between hours worked beyond the normally scheduled 135-hour 24-day cycle but shy of the 147-hour overtime threshold. 95 F.3d at 1266. However, this is not the only type of gap possible in an overtime gap time claim. There can also be a gap between what is promised to be paid as an employee's regular salary and what is actually paid. Nothing in § 778.315 or *Monahan* suggests a difference between *under*payment and *non*payment of straight time wages.[8] Simply put, *all* means all.

In a previous example, we assumed an employer owed their employee $1,500 in straight-time wages and $750 in overtime wages; however, the employer only paid a total of $1,750, designating $1,000 as straight-time wages and $750 as overtime. In this example, there is not a direct lack of payment for a period of *time*, so the gap is not precisely the same as the one alleged in *Monahan*. Instead, the "gap" is the $500 owed for straight-time wages, effectively meaning the employee has been paid for only 2/3 of their straight time worked ($1,000 out of $1,500). Because overtime "cannot be said to have been paid . . . unless all the straight time" is paid, 29 C.F.R. § 778.315, we would deem the first $500 of the overtime payment to be straight-time wages in order to fill that gap. That would,

---

[8] Cleveland County argues Conner did not allege any gap hours for which she was *un*compensated but instead alleged only that she was *under*compensated for straight time. We conclude that this is a distinction without a difference.

in turn, create an underpayment of overtime and, thus, an overtime violation under the FLSA.

As this example shows, allowing any amount other than the full amount of straight-time wages to count as compliance would frustrate the purposes of the FLSA just as surely as would nonpayment for specified hours. *See Fire & Safety Investigation Consulting Servs.*, 915 F3d at 286 (holding that allowing an employer to "merely label" components of employee's salary as "non-overtime" and "overtime" "would permit employers to invent [creative] payment schemes that . . . [are a] post-hoc attempt to reverse-engineer compliance with the FLSA" (quoting 29 U.S.C. § 778.310) (internal quotation marks removed)). If we did not mandate that *all* straight wages should be paid, we might encourage employers to simply shift wages to the "overtime" bucket and reduce the wages for straight time promised by the employment agreement (as shown in the example above). *See Barrentine*, 450 U.S. at 739 (noting "the FLSA was designed to . . . ensure that *each* employee . . . would be protected from 'the evil of overwork as well as *underpay*'" (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)) (second emphasis added) (internal quotation marks omitted)). Such action by employers would "defeat[]" the "Congressional purpose" to "plac[e] a penalty upon the performance of excessive overtime work." *Fire & Safety Investigation Consulting Servs.*, 915 F.3d at 286 (quoting 29 U.S.C. § 778.310).

Accordingly, our decision in *Monahan* recognized there is a cause of action under the FLSA for overtime gap time claims. Although many courts acknowledge our holding, *see, e.g.*, *Davis*, 765 F.3d at 244 (3d Cir.) (citing *Monahan* as an example of courts

recognizing as "viable" overtime gap time claims), some have declined to follow our reasoning and have rejected overtime gap time as a cognizable violation of the FLSA, *see Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013). The only other circuit to squarely consider § 778.315 and a claim for overtime gap time is the Second Circuit, which rejected the plaintiffs' gap-time claims. *Id.* at 116–17. Applying *Skidmore*, the Second Circuit summarily concluded that § 778.315 was owed no deference after finding it unpersuasive because the Department "provide[d] no statutory support or reasoned explanation for" § 778.315. *Id.* We respectfully disagree with the Second Circuit's decision in *Lundy.*

For the reasons previously noted, we afford "considerable deference" to the Department's interpretation of § 778.315. *See Monahan*, 95 F.3d at 1272 n.10. In *Monahan*, we "weighed the evidence . . . in the light of the [Department's § 778.315 guidance] and reached a result consistent" with such interpretation.[9] *Skidmore*, 323 U.S. at 140 (reversing the district court's judgment for the defendant because its interpretation of the FLSA overtime provision was contrary to the guidance provided by the Wage and Hour Administrator's interpretive bulletin).

Accordingly, we hold that overtime gap time claims are cognizable under the FLSA.

---

[9] While Cleveland County argues that *Monahan* was wrongly decided, it acknowledges that this panel "cannot depart from *Monahan*" at this stage of the proceedings, and "makes this argument only to preserve it for potential en banc review." Response Br. at 47; *see United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (quoting *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993))).

D.

Consistent with § 778.315 and *Monahan*, we now lay out the standard for determining whether a plaintiff has pled sufficient factual allegations of an FLSA overtime gap time violation to overcome a Rule 12(b)(6) motion to dismiss. To do so, the facts in the complaint must support a reasonable inference that: (1) the employee worked overtime in at least one week; and (2) the employee was not paid all straight-time wages due under the employment agreement or applicable statute. *Cf. Hall*, 846 F.3d at 777 (articulating a similar test for a typical overtime claim).

We begin our analysis by looking to our prior case law regarding overtime claims since overtime gap time violations fall under the larger umbrella of overtime violations. In *Hall*, we held that "a plausible overtime claim" could be sustained when the employee "worked more than forty hours in at least one workweek," and the "employer failed to pay the requisite overtime premium for those overtime hours." *Id.* at 776–77 (discussing and adopting a lenient pleading approach). For the first part—at least one week of overtime work—a reasonable inference can be supported by "sufficient detail about the length and frequency of [the employee's] unpaid work." *Id.* at 777 (quoting *Nakahata v. N.Y-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). This standard "does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours." *Id.* Rather, they must "provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Id.* (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

23

The second part of the standard in *Hall*—uncompensated overtime wages—provides a useful model for an overtime gap time claim. In an overtime gap time claim, we ask whether "*all* the straight time compensation" has been paid pursuant to the relevant employment agreement "(express or implied)" or "under any applicable statute," such that the employee can actually be said to have been compensated for their overtime. 29 C.F.R. § 778.315 (emphasis added).

To analyze straight-time compensation on the merits, the court needs to gain "a foundational understanding of the terms of the employment agreement" or applicable statute governing the work and compensation arrangement between the employer and the employee. *Monahan*, 95 F.3d at 1273. For purposes of FLSA claims, there does not "need[] to be any written contract, state law, regulation or statute, [or] collective bargaining agreement" if the terms of the agreement are "obvious" from the "employment policies, practices, and procedures" of the employer or "the parties' conduct." *Id.* at 1275. Such conduct includes, among others, the employer hiring and paying the employee's salary; the employer telling the employee the expected hours for straight work and overtime, and the employee working those hours; and the employee accepting a paycheck on a regular basis. *See id.* Once the terms of the employment agreement are understood, the court must ask whether "all" straight-time wages have been paid under the terms of the agreement.

For purposes of a motion-to-dismiss analysis, therefore, we ask whether Conner has adequately alleged that, under the terms of the employment agreement or statute, she did not receive the full amount of compensation due for straight-time wages.

24

To summarize, we apply a two-prong test for determining an overtime gap time violation under the FLSA. To overcome a Rule 12(b)(6) motion, a plaintiff must provide sufficient factual allegations that supports a reasonable inference that: (1) the employee worked overtime in at least one week; and (2) the employee was not paid all straight-time wages due under the employment agreement or applicable statute.

IV.

Having provided the foundation for analyzing overtime gap time claims, we now turn to the matter before us. For the reasons stated below, we hold that Conner has sufficiently pleaded allegations of an overtime gap time violation under the FLSA. We vacate and remand accordingly.

A.

Conner alleges that she worked overtime hours and that Cleveland County undercompensated her and similarly situated EMS personnel for their straight time worked. To sustain this case, Conner must provide sufficient factual allegations to support a plausible overtime gap time claim according to our two-prong test set forth above—(1) the employee worked overtime in at least one week; and (2) the employee was not paid all straight-time wages due under the employment agreement or applicable statute. We address each prong in turn.

1.

First, Cleveland County contends that Conner's complaint does not plausibly allege that she ever *worked* more than 40 hours a week because her amended complaint only states that full-time EMS personnel like Conner "are *scheduled* pursuant to a 21-day

25

repeating schedule" to work more than 40 hours a week. J.A. 9 (emphasis added). Further, Cleveland County argues that Conner only provides a "conclusory statement that she 'regularly worked in excess of forty hours per week without receiving overtime pay'" and that the FLSA requires more. Response Br. at 27 (quoting *Hall*, 846 F.3d at 777). These arguments are without merit.

In the Consent to Become a Party Conner attached to her amended complaint as an exhibit, Conner states she "worked the 24 hours on-48 hours off schedule during one or more work weeks of [her] employment." J.A. 21; *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (in evaluating motion to dismiss, we may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits" (citations omitted)). By its nature, the 24 on/48 off schedule dictates an employee will work more than 40 hours in any given week, as they will work either 48 hours or 72 hours each week. *See* Reply Br. at 20 n.9; *see also Conner*, 2019 WL 5294418, at *3 (magistrate judge noting the 21-day 24 on/48 off schedule means Conner worked overtime every single week). Cleveland County admits as much. Further, Cleveland County admits Conner was employed by the County as EMS personnel during the class period and she was scheduled to work the 24 on/48 off schedule.

Taken together and by Cleveland County's own admission, Conner sufficiently alleges she actually worked more than forty hours in at least one work week. Conner need not "identify a *particular* week" when she worked overtime, *Hall*, 846 F.3d at 777, but must merely provide enough "factual context" to "'nudge' [her] claim 'from conceivable to plausible,'" *id.* (quoting *Dejesus*, 726 F.3d at 90). We are satisfied that Conner has done

26

that by alleging she worked a 21-day, 24 on/48 off schedule. Thus, she satisfies the first prong.

2.

Conner also sufficiently alleges that the terms of her employment agreement were violated when Cleveland County failed to pay all of her straight-time wages, satisfying the second prong.

Conner contends the Ordinances are the employment agreement, and that they establish the salary that provides Conner's regular wages. *See* J.A. 10 (alleging the employment relationship is "one of contract," and Conner "and all other similarly situated employees have contractual rights to wages previously earned based on the . . . Ordinances"). She claims that the Plan is only relevant insofar as she is "subject to the same policies and procedures" for the payment of overtime set forth in the Plan. J.A. 12.

Conner alleges that, from 2015 to 2018, Cleveland County disregarded her employment agreement under the Ordinances and paid her regular wages under a different calculation provided in the Plan, resulting in lower pay than she would otherwise receive under the Ordinances. Conner points to Cleveland County's decision to change its method for compensating EMS personnel in 2018, when it began calculating "regular wages" by dividing the annual salary designated by the corresponding salary grade and step by 24. J.A. 14. She alleges that Cleveland County should have paid EMS personnel in the same manner for the three years prior to January 1, 2018.

27

We leave it to the district court in the first instance to gain "a foundational understanding" of these pay plans in order to determine the terms of the employment agreement at issue in this case and to determine the merits of Conner's claims. *Monahan*, 95 F.3d at 1273–74 (considering, at the summary judgment stage, local ordinances, the employer's policies and procedures, classified advertisements for the specific position, and the conduct of the parties in order to determine "the terms of the employment agreement"). For present purposes, we conclude that Conner has sufficiently averred (1) there was an employment agreement between the parties that governed the work and compensation arrangement between them, and (2) her straight-time wages have not been paid according to that arrangement.

It is enough to demonstrate Conner has raised sufficient allegations to "give [Cleveland County] fair notice of what the claim is and the grounds on which it rests." *Hall*, 846 F.3d at 765 (quoting *Wright*, 787 F.3d at 263). Conner has "state[d] a claim [for] relief" for underpayment of her straight time wages that "is plausible on its face." *Pledger*, 5 F.4th at 520 (quoting *Iqbal*, 556 U.S. at 678. Thus, Conner satisfies the two-prong test to plead sufficient factual allegations of an FLSA overtime gap time violation to overcome a Rule 12(b)(6) motion to dismiss.

### B.

Finally, regarding *Monahan*, the district court did not reject the validity of *Monahan* nor conclude that *Monahan* does not recognize overtime gap time claims. Rather, it found that Conner had not pleaded a valid overtime gap time claim under *Monahan*. *See Conner*, 2019 WL 3948365, at *2–3. In so concluding, the district court seized on *Monahan*'s

holding that

> if the mutually agreed upon terms of an employment agreement do not
> violate the FLSA's minimum wage/maximum hour mandates and provide
> compensation for all nonovertime hours up to the overtime threshold, there
> can be no viable claim for *straight gap time* under the FLSA if all hours
> worked above the threshold have been properly compensated at a proper
> overtime rate.

*Id*. at *3 (quoting *Monahan*, 95 F.3d at 1273) (emphasis added). The district court believed

that because Conner had been paid the appropriate rate for her overtime hours, she needed

to "assert plausible factual allegations that her 'straight time' compensation *agreement*

either violate[d] the minimum wage or maximum hour mandates of the FLSA*." Id*. at *2.

Because Conner "made no such allegation[]," the district court concluded that her FLSA

claim failed. *Id*. at *2–3.

The district court misconstrued our holding in *Monahan* regarding the importance

of the employment agreement when analyzing an overtime gap time claim. The test is not

whether the underlying employment agreement facially violates either the minimum wage

or maximum hour requirements. In such a case, an overtime gap time claim would be

unnecessary—the claim would instead be a normal minimum wage or overtime claim.

Instead, to determine whether there is an overtime gap time claim, we look to whether the

straight time wages have been paid pursuant to the terms of the employment agreement. If

the straight time wages have not been paid as such, and an employee works overtime that

week, then there could be an overtime gap time claim.

## V.

In sum, we hold that an overtime gap time claim is cognizable under the FLSA. The

FLSA ensures employees are adequately paid for all overtime hours. To do this, courts must ensure employees are paid all of their straight time wages first under the relevant employment agreement, before overtime is counted.

For the foregoing reasons, the district court erred in granting Cleveland County's motion for judgment on the pleadings. Accordingly, we vacate its opinion and remand for a determination on the merits of Conner's overtime gap time claim under the FLSA.[10]

*VACATED AND REMANDED*

---

[10] The district court declined to exercise supplemental jurisdiction over Conner's state breach-of-contract claim and dismissed it without prejudice. Because we vacate and remand Conner's FLSA claim, we also vacate and remand the district court's decision on Conner's breach-of-contract claim.