**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00002-MR-WCM**

| | |
|---|---|
| **SARAH B. CONNER, individually and on behalf of all others similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | **MEMORANDUM OF** |
| **vs.** ) ) | **DECISION AND ORDER** |
| **CLEVELAND COUNTY, NORTH CAROLINA, also known as Cleveland County Emergency Medical Services,** ) ) ) ) ) | |
| **Defendant.** ) _____ ) | |

     **THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit [Doc. 65], the Defendant's Motion to Dismiss [Doc. 40], and the Plaintiff's Motion to Revive Motion for Collective and Class Certification. [Doc. 72].

## I.    PROCEDURAL BACKGROUND

     On January 2, 2018, the Plaintiff, Sara B. Conner ("Plaintiff") filed this action individually and on behalf of all others similarly situated against Defendant Cleveland County Emergency Medical Services ("CCEMS"), asserting claims for a violation of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq., and a violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 et seq.[1] [Doc. 1]. CCEMS filed its answer on January 30, 2018, [Doc. 3], and on May 1, 2018, the Plaintiff moved for leave to file an amended complaint [Doc. 15]. The Court granted the Plaintiff leave and the Plaintiff filed an Amended Complaint on June 5, 2018. [Doc. 22]. The Plaintiff's Amended Complaint asserts claims against Cleveland County a/k/a Cleveland County Medical Services ("Cleveland County") for a violation of the FLSA and for a state law breach of contract claim. [Id.]. Cleveland County filed its answer to the Amended Complaint on July 2, 2018. [Doc. 27].

On November 13, 2018, the Plaintiff filed a Motion to Certify Class and Collective Action, seeking conditional certification of her FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and certification of her breach of contract claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. [Doc. 35]. On January 21, 2019, Cleveland County filed a Response to the Plaintiff's Motion to Certify Class and Collective Action, opposing certification of both claims. [Doc. 48]. On January 30, 2019, the Plaintiff filed a reply to Cleveland County's Response. [Doc. 50].

_____

[1] The parties stipulated to the dismissal of the NCWHA claim on April 2, 2018. [Doc. 14].

2

On December 21, 2018, Cleveland County filed a Motion to Dismiss the Plaintiff's claims. [Doc. 40]. On August 21, 2019, the Court adopted the Memorandum and Recommendation of the Honorable W. Carleton Metcalf, United States Magistrate Judge, dismissing the Plaintiff's FLSA claim with prejudice and declining supplemental jurisdiction on the Plaintiff's state law claim. [Doc. 59]. The Court therefore denied as moot the Plaintiff's Motion for Collective and Class Certification. [Id.].

The Plaintiff appealed the Court's dismissal, and on January 5, 2022, the Fourth Circuit issued an opinion vacating the Court's August 21, 2019, order, concluding that the Plaintiff had stated a cognizable claim for an FLSA violation and remanding for further proceedings on the merits of the Plaintiff's claims. Conner v. Cleveland Cnty., 22 F.4th 412, 429 (4th Cir. 2022). On April 18, 2022, the Plaintiff filed a Motion to Revive her earlier Motion for Collective and Class Certification. [Doc. 72]. On May 23, 2022, Cleveland County filed a Response in Opposition to the Plaintiff's Motion to Revive. [Doc. 75]. On June 6, 2022, the Plaintiff filed a Reply to Cleveland County's Response in Opposition. [Doc. 76]. Thus, the matter has been fully briefed and is ripe for disposition.

## II.     STANDARD OF REVIEW

### A.     FLSA Collective Action Conditional Certification

The FLSA "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." <u>Dearman v. Collegiate Housing Servs.</u>, No. 5:17-cv-00057-RJC-DCK, 2018 WL 1566333, at *2 (W.D.N.C. Mar. 30, 2018) (internal quotations omitted) (quoting <u>Houston v. URS Corp.</u>, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). Section 216 of the FLSA provides that an employee subject to a violation of the FLSA may bring suit on behalf of herself and similarly situated employees. 29 U.S.C. § 216(b). Specifically, § 216(b) states that:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

<u>Id.</u> Accordingly, courts have concluded that certification as a collective action under the FLSA requires: (1) that employees in the collective action be "similarly situated"; and (2) that all collective action members opt-in to the action by filing written consents. <u>Dearman</u>, 2018 WL 1566333, at *2.

4

While the Fourth Circuit has not established a process to determine whether prospective members are "similarly situated" in the FLSA context, courts in this circuit generally follow a two-step approach. See id. (collecting cases). At the first stage, when the record before the court is limited, the standard for determining whether putative members are similarly situated is "fairly lenient." Id. While "mere allegations will not suffice" and "some factual evidence is necessary," a plaintiff "generally need only make a relatively modest factual showing that [] a common policy, scheme, or plan [that violated the law] exists." Adams v. Citicorp Credit Servs., Inc., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (alterations in original) (internal quotations omitted) (first quoting Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2015); and then quoting Mitchel v. Crosby Corp., No. DKC 10-2349, 2012 WL 4005535, at *2-3 (D. Md. Sept. 10, 2012)). Should the Court find this factual showing satisfied, it may conditionally certify the collective action and "authorize plaintiff['s] counsel to provide the putative class members with notice of the lawsuit and their right to opt in." Dearman, 2018 WL 1566333, at *2.

After discovery is "virtually complete," and if the defendant files a motion for decertification, the court proceeds to step two. Id. At this second stage, courts apply a heightened standard and perform a more fact-specific

analysis to determine whether members are similarly situated. Id. Accordingly, the Court will proceed with the first step of the two-step analysis in the present case.[2]

## B.    Breach of Contract Class Action

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). To justify a departure from that usual rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 348-49 (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). Thus, in seeking the certification of a class action, a putative class representative must demonstrate as a threshold matter that she is a member of the

---

[2] Cleveland County argues that, rather than applying the more lenient first-step standard, this Court should apply an "intermediate" standard because some discovery has been conducted. [Doc. 75 at 12]. To support this argument, Cleveland County cites a case from this district, Blaney v. Charlotte-Mecklenburg Hosp. Auth., No. 3:10-cv-592-FDW-DSC, 2011 WL 4351631, at *3 (W.D.N.C. Sept. 16, 2011) (Mullen, J.), for the proposition that "when there is sufficient evidence in the record at the first stage to make clear that certification is not appropriate, the court 'can collapse the two stages of the analysis and deny certification outright.'" Blaney, 2011 WL 4351631, at *3 (quoting Purdham v. Fairfax Cnty. Pub. Schs., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)). However, as pointed out in cases decided subsequent to Blaney, use of the Blaney approach is an outlier and most courts in this circuit continue to follow the two-step approach with no "intermediate" standard, even if some discovery has been completed. See Long v. CPI Sec. Syss., Inc., 292 F.R.D. 296, 299 (W.D.N.C. 2013) (collecting cases). Accordingly, the Court will apply the two-step approach in conformity with most courts in this circuit.

6

proposed class and that the other class members are "readily identifiable" or "ascertainable." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.").

Once this threshold determination has been made, the Court must then determine whether the readily identifiable class should be certified. Rule 23(a) of the Federal Rules of Civil Procedure sets forth the four prerequisites that an action must satisfy in order to be certified as a class action: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims and defenses of the class as a whole ("typicality"); and (4) the representative party must fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (citations and internal quotation marks omitted).

7

In addition to satisfying the requirements of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003). Here, the Plaintiff seeks certification under Rule 23(b)(3), which provides:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating compliance with Rule 23. "A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. Rather, the party must present evidence that the putative class complies with Rule 23." EQT Prod. Co, 764 F.3d at 357 (internal citations omitted). While

8

the plaintiff bears the burden of demonstrating compliance with Rule 23, the Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." Id. at 358 (quoting in part Dukes, 564 U.S. at 350-51). To satisfy this obligation, the Court may "probe behind the pleadings before coming to rest on the certification question." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (citation and internal quotation marks omitted). Ultimately, the decision to certify a class action is within the discretion of the Court. Gunnells, 348 F.3d at 424.

## III.    FACTUAL BACKGROUND

The Plaintiff has been employed by CCEMS as a full-time Emergency Medical Services ("EMS") employee since 2007. [Doc. 37: Conner Decl. at ¶ 2]. CCEMS assigns EMS employees such as the Plaintiff to a work schedule that consists of a "21-day repeating schedule whereby the employee works a 24-hour shift, followed by 48-hours off" ("the 24 on/48 off schedule"). [Id. at ¶ 11]. Accordingly, employees assigned to the 24 on/48 off schedule will work either 48 or 72 hours in a given seven-day workweek.[3] [Id.].

Cleveland County has established a Code of Ordinances ("the Ordinances") that includes an ordinance entitled "Personnel." [Id. at ¶ 6].  The

---

[3] In a 21-day cycle, an employee would be scheduled to work 48 hours during two weeks, and 72 hours during the third week.

Personnel Ordinance establishes salary grades (and minimum and maximum annual salaries within each grade) that correspond to various job classifications. [Id.]. Like all full-time Cleveland County employees, all 24 on/48 off employees are assigned a job classification and salary grade according to the Ordinances. [Id. at ¶ 6]. For example, according to the Ordinances, the Plaintiff's job classification in 2017 was "EMT-Paramedic," and her salary grade was 65, which corresponded to a minimum annual salary of $33,606 and a maximum annual salary of $52,416. [Id.]. Each salary grade is divided into twenty half steps, and each half step corresponds to a specific annual salary within the grade's salary range. [Id. at ¶ 7]. For example, the Plaintiff in 2017 was designated as Grade 65, Step 3a, which corresponded to an annual salary of $36,900. [Id.].

The Plaintiff asserts that this Ordinance created an implied contract between 24 on/48 off employees and Cleveland County, and that the terms of this implied contract constitute the whole agreement between Cleveland County and all 24 on/48 off employees.[4] [Doc. 22 at ¶ 31]. Particularly, she asserts that this amount constitutes her base pay before the calculation of

---

[4] Cleveland County disputes this allegation, alluding to the existence of individualized contract terms based on individual negotiations between each employee and the County. [Doc. 75 at 50]. At this stage of the collective action certification analysis, however, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Adams, 93 F. Supp. 3d at 454 (internal quotations omitted) (quoting Fisher v. Mich. Tel. Co., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009)).

overtime. In other words, each semi-monthly payment should be calculated as $1,537.50 ($36,900 divided by 24) plus overtime.

While all full-time Cleveland County employees are assigned a classification and salary grade according to the Ordinances, only 24 on/48 off employees are paid according to a special provision called the "Section 14-Pay Plan" ("the Plan"). [Id. at ¶ 12]. The Plan establishes how overtime is paid for 24 on/48 off employees. [Doc. 37-6: Section 14 Pay Plan]. The Plan provides that the hourly rate of pay for 24 on/48 off employees is calculated by dividing an employee's annual salary, per the Ordinances, by 2,928, the total yearly hours including overtime worked by 24 on/48 off employees. [Id.]. That hourly rate is then multiplied by 1.5 to calculate a 24 on/48 off employee's overtime rate. [Id.]. For example, the Plan would calculate the Plaintiff's hourly rate by dividing her annual salary assignment of $36,900 by 2,928 to arrive at an hourly rate of $12.60. [Doc. 37: Conner Decl. at ¶ 16]. The Plaintiff's overtime rate would then be calculated by multiplying $12.60 by 1.5 for an overtime rate of $18.90. [Id.].

Prior to January 1, 2018, a "revised semi-monthly rate" (Plan I) was also calculated for 24 on/48 off employees. [Id. at ¶ 17]. The revised semi-monthly rate was calculated by multiplying the regular hourly rate by 2080, the total number of non-overtime hours worked in a year, and dividing the

11

resulting number by 24, the number of pay periods in a year. [Doc. 37-7: Section 14 Pay Plan]. For example, the Plaintiff's Plan I (revised semimonthly) rate would be calculated by multiplying $12.60 by 2080, for a total of $26,208, and dividing that by 24, for a final rate of $1,092 (before payment of overtime). [Doc. 37: Conner Decl. at ¶ 20]. After January 1, 2018, a "semimonthly rate"[5] (Plan II) was calculated for 24 on/48 off employees by dividing their annual salary by 24. [Id. at ¶ 18]. For example, the Plaintiff's semimonthly rate would be calculated by dividing $36,900 by 24, or $1,537.50 (before payment of overtime). [Id. at ¶ 20].

Accordingly, under Plan I (prior to January 1, 2018), the Plaintiff's total annual salary (including overtime pay) was $26,208 plus overtime pay of $16,027.20 ($18.90 multiplied by her total overtime hours worked, 848) for a yearly salary of $42,235.20. [Id.]. Under Plan II (after January 1, 2018), the Plaintiff's total yearly salary was $36,900 plus her overtime pay of $16,027.20 ($18.90 multiplied by total overtime hours worked, 848), or a total of $52,927.20.[6] [Id.].

---

[5] The terminology employed by the Plaintiff is most confusing because the "revised semimonthly rate" is that applied *before* the revisions of January 1, 2018, and the "semimonthly rate" is that applied *after* the revision.

[6] The Court notes that the change to the pay scheme in Plan II creates an internal inconsistency. For example, if the Plaintiff's base pay apart from overtime is $36,900, then it would seem that the Plaintiff's hourly wage is $17.74, not $12.60 (36,900 divided

The Plaintiff asserts that calculating a 24 on/48 off employee's pay according to Plan I contradicted the contract of employment as set forth in the Ordinances. Based thereon, the Plaintiff argues that the revised semi-monthly rate used for 24 on/48 off employees prior to January 1, 2018, undercompensated employees for overtime. [Id. at ¶ 21]. The Plaintiff contends that by using $26,208, rather than $36,900, as the starting point for her yearly salary before adding overtime pay, Cleveland County used overtime pay to fill a "gap" between 24 on/48 off employees' yearly rates as calculated using the revised semi-monthly rate and their true annual salary as established by the Ordinances. [Id.].

## IV.   DISCUSSION

The Plaintiff seeks revival of and a ruling on the merits on her earlier Motion for Collective and Class Certification. [Doc. 72; Doc. 35]. As this Court's order addressing Cleveland County's Motion to Dismiss was vacated by the Fourth Circuit, the Court will also address the status of that motion.

---

by 2,080 equals 17.74; 36,900 divided by 2,928 equals 12.60). If the Plaintiff's straight time wage is $17.74, then the Plaintiff's overtime wage would be $26.61 (17.74 times 1.5), not $18.90, as set forth in *both* plans. As such, carrying over the overtime rate from Plan I into Plan II causes Plan II to be an internally inconsistent hybrid.

## A. Motion to Dismiss

The Fourth Circuit held that the Plaintiff's Amended Complaint stated a cognizable claim under the FLSA. Conner, 22 F.4th at 429. Specifically, the Fourth Circuit stated that: "[T]o determine whether there is an overtime gap time claim, we look to whether the straight time wages have been paid pursuant to the terms of the employment agreement. If the straight time wages have not been paid as such, and an employee works overtime that week, then there could be an overtime gap time claim." Id. The appeals court held that the Plaintiff had plausibly alleged that her straight time wages were not paid pursuant to the terms of her employment agreement in weeks where she worked overtime. Id. at 428. Accordingly, the Fourth Circuit vacated this Court's Order granting Cleveland County's Motion to Dismiss and declining supplemental jurisdiction on the Plaintiff's state law breach of contract claim. Id. at 429. The Fourth Circuit stated that it was specifically remanding "for a determination on the merits of Conner's overtime gap time claim under the FLSA." Id. In light of the Fourth Circuit's opinion, the Court concludes that the Plaintiff has stated a claim for an FLSA violation, and Cleveland County's Motion to Dismiss will be denied as to the Plaintiff's FLSA claim.

The Fourth Circuit also stated: "Because we vacate and remand Conner's FLSA claim, we also vacate and remand the district court's decision

14

on Conner's breach-of-contract claim." Id. at 429 n.10. Upon review of the allegations set forth in the Plaintiff's Amended Complaint, the Court concludes that the Plaintiff has plausibly stated a claim for breach of contract. Accordingly, Cleveland County's Motion to Dismiss will also be denied as to the Plaintiff's breach of contract claim.

Ordinarily, the existence and terms of a contract would be questions of law for the Court. The Plaintiff asserts that the relevant contract of the parties between 2015 and 2017 is embodied entirely in the Ordinances and is properly applied only in Plan II (effective January 1, 2018). The Plaintiff's allegations as to both the existence of such contract and its proper interpretation are very thin.[7] On this record the Court can make no conclusions as to either. However, applying the "fairly lenient" standard at this early stage, particularly considering the direction of the Court of Appeals to determine whether the Plaintiff and the putative class of "employees are paid all of their straight time wages first under the relevant employment agreement," [Doc. 65 at 30], the Court will not dismiss the matter due to the

---

[7] For example, if the Ordinances comprise the complete agreement as the Plaintiff contends, the Plaintiff has not explained how the payment terms of that agreement can be discerned regarding an employee who is anticipated to work overtime virtually every week, without reference to some extraneous material.

meager plausibility of the Plaintiff's allegations. Such questions are best left for summary judgment, or if appropriate, for the jury.

## B. Conditional Certification of FLSA Collective Action

In her Motion for Collective and Class Certification, the Plaintiff sought conditional certification of her FLSA claims and authorization to send Court-supervised notice of this action to putative class members. [Doc. 35]. On remand, the Plaintiff now asks that the Court equitably toll the FLSA's statute of limitations for all putative members of the collective action and issue a ruling on the merits of certification of the collective action. [Doc. 73 at 4]. Cleveland County argues that all putative members' claims are time-barred and, in the alternative, that certification as a collective action is inappropriate in this case.[8] [Doc. 75 at 2].

---

[8] Cleveland County also argues that the mandate rule bars this Court from determining whether to conditionally certify the Plaintiff's FLSA claim as a collective action. [Doc. 75 at 6]. "The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007). Cleveland County argues that, because the Plaintiff's appellate briefing requested remand with an instruction that her motion for certification as a collective action was no longer moot, and because the Fourth Circuit did not explicitly include such an instruction, that this Court is barred from considering the motion further. [Doc. 75 at 6-7]. However, rather than "la[ying] to rest" the question of certification as a collective action, the Fourth Circuit vacated this Court's earlier opinion and remanded for further proceedings, necessarily vacating the denial of the Plaintiff's Motion for Collective and Class Certification. Conner, 22 F.4th at 429. Additionally, while not taken up directly by the Fourth Circuit, the opinion at the very least anticipates further proceedings on the issue of collective action certification, noting in a footnote that a possible typographical error made in the Complaint defining the class period "is of no moment to this appeal" and "le[ft] it for the parties and the district court to clarify on remand as needed." Id. at

16

1. *Equitable Tolling*

Actions arising under the FLSA must be commenced within two years after the cause of action accrued, or within three years if the alleged violation was willful. 29 U.S.C. § 255(a). For a named plaintiff, such as the Plaintiff in this case, an action is considered commenced upon the filing of the complaint. Id. § 256(a). For the putative members of the collective action, however, the action is not commenced until each member files a written consent to become a party plaintiff. Id. § 256(b). Here, the parties do not dispute that the statute of limitations for the putative members expired during the pendency of the Plaintiff's appeal. The Plaintiff argues, however, that the Court should equitably toll the statute of limitations from November 13, 2018, the date she filed her Motion for Collective and Class Certification, through the end of the notice period to putative members, should the Court conclude conditional certification as a collective action is appropriate. [Doc. 73 at 6]. Cleveland County, on the other hand, argues that equitable tolling would not be appropriate in this case.

Equitable tolling applies where "'extraordinary circumstances beyond plaintiffs' control [make] it impossible to file the claims on time.'" Chao v.

_____

418 n.4. Accordingly, the Court concludes that the mandate rule does not bar this Court from further consideration of the question of certification as a collective action.

17

Virginia Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); see also Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (allowing equitable tolling only in "extraordinary" cases where circumstances beyond a claimant's control cause her to miss a deadline). Equitable tolling should not be employed to aid claimants who "failed to exercise due diligence in preserving [their] legal rights." Chao, 291 F.3d at 283.

Courts in this circuit have found equitable tolling to be warranted where, as in the present case, an FLSA case's procedural path delayed collective action certification. See, e.g., Weckesser v. Knight Enters. S.E., LLC, No. 2:16-cv-02053-RMG, 2018 WL 4087931 (D.S.C. Aug. 27, 2018); Lorenzo v. Prime Commc'ns, L.P., No. 5:12-cv-69-H, 2014 WL 3366073 (E.D.N.C. July 9, 2014); Hansen v. Waste Pro of S.C., Inc., No. 2:17-cv-02654-DCN, 2020 WL 1892243 (D.S.C. April 16, 2020). In Weckesser, the plaintiffs requested that the court equitably toll the statute of limitations because the action was stayed for 496 days while an order denying a motion to compel arbitration was on appeal. Weckesser, 2018 WL 4087931, at *3. The court granted that request, noting that the plaintiffs, who had not yet filed a motion for conditional certification of the collective action, could not file during the interlocutory appeal because the appeal divested the district court

of jurisdiction. Id. In Lorenzo, the court equitably tolled the statute of limitations when the defendant's motions for arbitration and related appeals delayed the district court's ruling on her motion for collective certification by over a year. Lorenzo, 2014 WL 3366073, at *3. In Hansen, the court tolled the statute of limitations when more than a year and a half elapsed between the plaintiffs filing a motion for conditional certification and the court's ruling on that motion because court delayed ruling on the motion while it resolved jurisdictional issues. Hansen, 2020 WL 1892243, at *9. In doing so, the court distinguished a case where equitable tolling was not warranted when another pending motion delayed a court's ruling on conditional certification by only four months. Id. at *9.

Cleveland County, however, argues that this case is not akin to cases where equitable tolling has been applied.[9] [Doc. 75 at 9]. Citing other district

---

[9] Cleveland County also argues: "Every potential opt-in member had an opportunity to sue the County under the FLSA. And Plaintiff had access to—or at least had the opportunity to access—the roster of all potential opt-in members." [Doc. 75 at 10]. This seems to be an argument that because the putative members could have commenced individual suits or filed consents prior to conditional certification, equitable tolling is not warranted. However, while the potential members *could have* filed individual suits or filed written consents prior to conditional certification, see, e.g., Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 168 (1989) (noting that 400 written consents were filed with the complaint, prior to conditional certification), they were not required to do so. While putative members who did not file individual suits may have now forgone that opportunity, it does not follow that they should therefore also lose the opportunity to also proceed in a collective action. Nor should they have been expected to anticipate that this action's procedural path would prevent the Court from reaching the merits of the Motion to Certify Class and Collective Action before the statute of limitations had run.

court cases, Cleveland County argues that courts regularly decline to apply the equitable tolling doctrine where delays were caused by the regular progression of motions practice. [Id. at 9-11].

The cases cited by Cleveland County are distinguishable. In LaFleur v. Dollar Tree Stores, Inc., No. 2:12-cv-00363, 2012 WL 4739534 (E.D. Va. Oct. 2, 2012), the plaintiffs sought equitable tolling while a defendant's motion to dismiss was pending. LaFleur, 2012 WL 4739534, at *4-5. The court in that case declined to toll the statute of limitations, noting that the motion had been pending for only three months. Id. at *7. The LaFleur court recognized, as other courts have, that Congress could have included a provision in the FLSA to toll the statute of limitations for an entire putative class on filing of the complaint—as is the case in class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure—but chose not to. Id. at *6. Accordingly, the court surmised, Congress's intent was that the statute of limitations would not be tolled in cases following the ordinary course of litigation, such as cases where a motion was pending for only a few months. Id. at *6-7. However, in reaching its conclusion, the Court recognized that a longer delay might harm plaintiffs and warrant tolling, citing as an example another case where the statute of limitations was tolled because a motion to certify the potential class had been pending for over a

year. Id. at *6-7 (citing Owens v. Bethlehem Mines Corp., 630 F. Supp. 309 (S.D. W. Va. 1986)).

In Noemi Russo v. Joamar, Inc., No. LA CV 10-3939 JAK (MRWx), 2021 WL 4773185 (C.D. Cal. Mar. 8, 2021), the plaintiff requested equitable tolling through the end of the notice period to accommodate the inherent delay between filing a motion for conditional certification of the collective action and ruling on that motion. Noemi Russo, 2021 WL 477 3185, at *6. The plaintiff also referenced the COVID-19 pandemic and resulting "court-slowdowns" as support for the application of equitable tolling. Id. at *7. The court declined to toll the statute of limitations, noting that, unlike another case where the COVID-19 pandemic caused a delay in ruling on a motion for conditional certification of a collective action of over one-and-a-half years, the pandemic had not "meaningfully delayed adjudication" of the plaintiff's motion. Id. In declining to toll the statute of limitations, the Noemi Russo court also highlighted that "[n]either a stay order *nor an appeal* has affected timing of the proceedings in this action." Id. at *7 (emphasis added). Similarly, in Syrja v. Westat, Inc., 756 F. Supp. 2d 682 (D. Md. 2010), the court denied the plaintiff's request to toll the statute of limitations during the pendency of the motion for conditional certification when there was no unusual delay in the court's ruling on the motion. Syrja, 756 F. Supp. 2d at 688 n.9.

The decisions cited by Cleveland County all address cases that did not involve an appeal but rather where the delay between the plaintiff filing a motion for conditional certification and the ruling on that motion was only a few months. This is not the case for the present action. The Plaintiff here requests tolling here because, as in <u>Weckesser</u> and <u>Lorenzo</u>, and unlike in <u>Noemi Russo</u>, <u>Syrja</u>, and <u>LaFleur</u>, an appeal delayed this action. Moreover, the delay caused by this appeal—almost two-and-a-half years—is well over the year and year-and-a-half-long periods the courts in <u>Weckesser</u>, <u>Lorenzo</u>, and <u>Hansen</u> concluded were significant delays that warranted equitable tolling. Accordingly, the Court concludes that the lengthy delay caused by the appeal warrants equitable tolling from November 13, 2018, through the end of the notice period.[10]

### 2. *Conditional Certification of the Collective Action*

The Plaintiff seeks conditional certification of a collective action comprised of 24 on/48 off employees who were employed by Cleveland County anytime between January 2, 2015, and December 31, 2017.[11] [Doc.

---

[10] The Court will set the deadline for the notice period after it has ruled on any objections to the Plaintiff's proposed notice.

[11] The Plaintiff's Amended Complaint defines the FLSA class period as spanning from January 2, 2015, through January 1, 2018. [Doc. 22 at ¶ 61]. However, as the Plaintiff's Motion for Collective and Class Certification was filed after the Amended Complaint and ends the class period on December 31, 2017, and as the Plaintiff's allegations deal with

35 at ¶ 4]. The Plaintiff argues that all 24 on/48 off employees are similarly situated because their compensation was established by the Ordinances, they were all paid using the "revised semi-monthly rate" (i.e. Plan I) which resulted in a lower annual salary for non-overtime hours than the Ordinance salary, and, therefore, they were all subject to unlawful underpayment of overtime. [Doc. 36 at 15]. Cleveland County, on the other hand, disputes that the Ordinances "expressly promise specific annual compensation," [Doc. 75 at 20], and argues that whether employees were properly paid for all of their non-overtime hours would require an individualized inquiry of what salary representations were made to each individual employee.[12] [Doc. 48 at 15-17, Doc. 75 at 11-13].

At this step in the certification analysis, the Plaintiff has sufficiently alleged that the County implemented a common plan or policy that violated the FLSA and that applied to all 24 on/48 off employees of the County. The

the pay plan that was used prior to (and not including) January 1, 2018, the Court will proceed with the class period as set out in the Plaintiff's Motion for Collective and Class Certification.

[12] In its Response to the Plaintiff's earlier Motion to Certify Class and Collective Action [Doc. 48], Cleveland County also argued that the Court should not conditionally certify the collective action because the Plaintiff's allegations failed to state a claim for a violation of the FLSA, and, therefore, she had failed to make a showing that a common plan or policy that violated the law existed. [Doc. 48 at 9-15]. As the Court has concluded on remand that the Plaintiff has in fact stated a claim for an FLSA violation, the Court will not address this argument further.

Plaintiff has maintained that the terms of the Ordinances constitute the only representation made about salary to all 24 on/48 off employees. Although Cleveland County disputes this allegation, at this stage of the collective action certification analysis "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Adams, 93 F. Supp. 3d at 454 (internal quotations omitted) (quoting Fisher v. Mich. Tel. Co., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009)). Accordingly, at this stage of the proceedings, the Court concludes that the Plaintiff has presented sufficient facts to demonstrate that a determination of the merits of this claim would require only review of the compensation established by the terms of the Ordinances and whether use of the Section 14 Pay Plan (i.e. Plan I) resulted in unlawful underpayment for all 24 on/48 off employees and would not require a review of any individualized salary negotiations. Therefore, the Court concludes that the Plaintiff has made a sufficient showing to warrant conditional certification of a class of employees defined as: all Cleveland County employees employed on a 24 on/48 off schedule between January 2, 2015, and December 31, 2017.

### C. Breach of Contract Claim

In her original Motion for Collective and Class Certification, the Plaintiff sought certification pursuant to Rule 23 of the Federal Rules of Civil

Procedure of a class of "similarly situated '24-hours on/48-hours off' personnel" for a state law breach of contract claim. [Doc. 35]. Cleveland County argues that all potential class members' claims are time-barred and, in the alternative, that the Plaintiff has not met her burden for class certification. [Doc. 75 at 13, 17].

### 1.    Statute of Limitations

The statute of limitations for the Plaintiff's North Carolina breach of contract claim is two years. N.C. Gen. Stat. § 1-53(1) (2022). However, "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class.'" Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983) (quoting Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)). Accordingly, the Plaintiff argues that, because the filing date of her Amended Complaint related back to the filing date of her original Complaint, the statute of limitations has been tolled for all putative members of the class since January 2, 2018. [Doc. 73 at 6].

Cleveland County, on the other hand, argues that tolling ended when this Court denied as moot the Plaintiff's Motion for Collective and Class Certification and, therefore, any putative members' claims would now be time barred. [Doc. 75 at 13-14]. In so arguing, Cleveland County relies on cases that have held that the statute of limitations for putative class members

25

remains tolled "'until class certification is denied' for whatever reason." Bridges v. Dep't of Md. State Police, 441 F.3d 197, 211 (4th Cir. 2006) (quoting Crown, 462 U.S. at 354); see also Armstrong v. Martin Marietta Corp., 138 F.3d 1374 (11th Cir. 1998); Giovanniello v. ALM Media, LLC, 726 F.3d 106 (2d Cir. 2013). Cleveland County's reliance on these cases, however, is misplaced, as none of them address the situation, as is the case here, where putative members sought to join an action after a successful appeal and reversal of a denial of class certification.

In Bridges, the plaintiffs' motion for class certification was denied without prejudice because the plaintiffs requested more discovery in lieu of a reply. Bridges, 441 F.3d 197 at *203. The district court provided that the motion for class certification would be automatically renewed if the plaintiffs filed a reply to the defendants' opposition. Id. However, the plaintiffs never filed a reply as they reached a partial settlement—which was approved by prospective class members who attended a meeting with the court—and decided to otherwise abandon the class action and proceed only on the individual claims. Id. In an attempt to protect absent class members from the statute of limitations by having their claims relate back to the date the complaint was filed, the plaintiffs moved to amend their original complaint to add eighteen prospective class members as plaintiffs. Id. at *204. The court

denied this amendment, noting that the statute of limitations had run on the prospective plaintiffs' claims because such claims were unrelated to the original plaintiffs' claims and therefore the amendment could not relate back to the original filing date. Id. The "would-be plaintiffs" moved to reconsider, arguing that the statute of limitations remained tolled even after the court denied the motion for class certification. Id. at *205. However, the district court stated that allowing an amendment so that the would-be plaintiffs could bring individual claims "when [the original plaintiffs] have abandoned their plan to seek class certification" would be unfair. Id. The Fourth Circuit agreed, stating that the would-be plaintiffs could not have reasonably believed that their ability to bring individual claims was protected by the tolling of the statute of limitations after the motion for class certification had been denied and the plaintiffs took no action to renew the motion and abandoned the class action. Id. at *211-12.

Bridges presents an entirely different situation from the case at hand. Bridges stands for the principle that prospective members cannot rely on tolling to protect their *individual* claims after a class certification has been denied. Unlike the plaintiffs in Bridges, the Plaintiff here did not abandon the class action. Here, the Plaintiff diligently pursued this claim on behalf of the class, including pursuing a successful appeal. Also unlike Bridges, where the

27

denial of the motion for class certification remained in place throughout the remainder of the action, this Court's denial of the Plaintiff's Motion has been vacated. Here, prospective members are not seeking to file individual claims while a denial of class certification remains in place but to continue as a class now that such denial has been vacated.

Armstrong similarly addresses a situation where plaintiffs who sought to file individual suits after the denial of a class certification. Armstrong, 138 F.3d at 1379. The plaintiffs in Armstrong filed individual suits after the district court denied a motion for class certification. However, even accounting for the time the statute of limitations was tolled between the filing of the original complaint and the denial of class certification, the individual suits were filed after the statute of limitations had run. Id. at 1379-80. The Armstrong plaintiffs argued that, because the denial of class certification was an interlocutory order and could be appealed and eventually reversed after a final judgment had been entered, that the statute of limitations should have remained tolled for their individual complaints. Id. at 1380. The plaintiffs argued that to hold otherwise would force plaintiffs to choose between pursuing an appeal of a denial of class certification or preserving their individual suits. Id. at 1391. The Armstrong court disagreed, stating that:

> A putative class member who wishes to preserve both rights should file her individual suit and

28

immediately seek a stay of the individual suit pending the outcome of an appeal from the denial of class certification. If, in the judgment of the district (or state) court to whom the application for a stay has been made, the plaintiff's hopes for reversal of the initial denial of class certification are strong, and if the delay caused by the stay will not be too great, the court may, in its discretion, grant the stay; if the court believes that the chances of reversal are slim or the delay caused by waiting for the appellate process to conclude will be too long (as will usually be the case), the stay will properly be denied, and the plaintiff will properly have to proceed individually.

Id.

The Armstrong court's statements, however, apply to plaintiffs who wish to *both* pursue an appeal and preserve their ability to pursue individual relief. Here, prospective members did not file individual suits. Accordingly, they were presumably relying on a successful appeal as their only avenue to pursue the claims at issue in this case. Had the Plaintiff's appeal been unsuccessful, Armstrong would be persuasive in support of barring subsequently brought individual claims from the prospective members. However, the appeal was successful, and the denial of class certification was vacated. In fact, Armstrong weighs in favor of finding that the statute of limitations remains tolled here, because if the Armstrong members had no hope of ever proceeding with their claims as a class even if a successful appeal reversed the denial, then the court would not have recommended that

29

they seek a stay of the individual actions to pursue the appeal. Accordingly, Armstrong supports the conclusion that the statute of limitations remains tolled for the prospective members to pursue their claims as a class.

Giovanniello is similarly unpersuasive as it involves a plaintiff attempting to bring a fourth successive suit after the statute of limitations had run. 726 F.3d at 108-09. The plaintiff in Giovanniello originally filed a claim in state court on behalf of himself and a class. However, he voluntarily withdrew that complaint several months after filing it. Id. at 108. The plaintiff again filed a complaint stating the same claim less than a month after withdrawing his first complaint, but voluntarily dismissed that complaint nine months later. Id. The Plaintiff then filed a class action in federal court that was dismissed for lack of subject matter jurisdiction because the district court concluded that a class action was not available for the plaintiff's claims. Id. The plaintiff appealed, but the action was dismissed after the plaintiff failed to respond to a show cause order. Id. The plaintiff then filed his fourth class action, which the district court concluded was untimely. Id. at 109. On appeal, the plaintiff argued that the statute of limitations was tolled when he filed his original state suit and remained tolled during the pendency of all three previous actions through dismissal. Id. The Second Circuit disagreed,

holding that tolling ended when the plaintiff's class action was dismissed by the district court in his third lawsuit. Id. at 119.

Here, however, the Plaintiff is pursuing the same action that was appealed. Unlike in Giovanniello, the plaintiff did not abandon the action after class status was denied but instead successfully appealed. Giovanniello's holding that the statute of limitations does not remain tolled for plaintiffs to bring a separate lawsuit is not applicable here.

The present case is analogous to Bishop v. Air Line Pilots Ass'n, Int'l, 331 F.R.D. 481 (N.D. Ill. 2019). In Bishop, the district court denied as moot the plaintiff's motion for class certification when it granted the defendant's motion for judgment on the pleadings. Bishop, 331 F.R.D. at 484. The plaintiffs appealed, and the Seventh Circuit reversed and remanded. Id. On remand, the defendant argued that the statute of limitations for absent class members had expired while the case was on appeal. Id. The court disagreed, concluding that because class members were seeking to continue prosecuting their claims as part of a timely filed class action suit, the filing of the original complaint tolled the statute of limitations for all putative members. Id. at 487.

Gelman v. Westinghouse Elec. Corp., 556 F.2d 699 (3d Cir. 1977), similarly supports concluding that the statute of limitations remains tolled

31

here. In <u>Gelman</u>, plaintiffs sought an interlocutory appeal of a denial of class certification. <u>Gelman</u>, 556 F.2d at 700-01. They argued that if they were not permitted to appeal the denial until after a final judgment on the individual claims, that the statute of limitations would have run by the time the appellate court was able to review the denial, "thus barring the class members from taking advantage of any appellate ruling in favor of class certification." <u>Id.</u> at 701. The Third Circuit disagreed, stating that "when an appellate court reverses a district court denial of class certification the status of the class members is to be determined by relation back to the date of the initiation of the suit." <u>Id.</u> Accordingly, the court declined to permit the interlocutory appeal, stating that "appellants will suffer no prejudice should we determine at a later date that the district court erred in denying class certification." <u>Id.</u> at 702.

Here, because class members' claims will be prosecuted as part of a timely filed class action, their status should be determined by the date of the Plaintiff's original filing. As in <u>Bishop</u>, and unlike in the cases cited by the defendant, this Court's denial of class certification has been vacated and putative class members will be prosecuting their claims as part of a timely filed class action, not as individual suits following a denial of class certification that remains in place. Accordingly, the Court concludes that the

32

statute of limitations for putative members remains tolled and putative members are not time-barred from joining the class.

### 2. Class Certification

The Plaintiff alleges that the terms of the Ordinances created a contractual obligation on the part of Cleveland County to pay all of its 24 on/48 off employees the salary listed in the Ordinances for non-overtime hours. [Doc. 36 at 20]. The Plaintiff argues that by using the Section 14 Pay Plan as it was written prior to January 1, 2018, Cleveland County breached that contract because it paid 24 on/48 off employees less than the Ordinance salary for non-overtime hours. [Id.]. The Plaintiff also argues that the Court should certify this breach of contract claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### a. Readily Identifiable Class

"The plaintiff bears the burden of offering a reliable and administratively feasible mechanism for determining whether putative class members fall within the proposed class definition." Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 390 (M.D.N.C. 2015) (quoting in part Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). The Plaintiff seeks certification on her breach of contract claim of a class of "[a]ll current and former full-time EMS personnel who were employed during the period January 2, 2016 through

33

January 1, 2018."[13] [Doc. 22 at ¶ 63]. Here, the Plaintiff has provided a method for determining the class members because only 24 on/48 off employees were subject to the revised semi-monthly rate plan. Accordingly, this class can be determined based on the schedules of Cleveland County employees during the class period. CCEMS Director Joe Lord testified that sixty-nine employees, identifiable by their schedules, worked the 24 on/48 off schedule at any given time, and that employees who had worked the 24 on/48 off schedule during the class period but had since left Cleveland County employment could be identified by human resources. [Doc. 38-2 at 7]. As the class is ascertainable through an examination of Cleveland County's business records from the class period, the Court concludes that the Plaintiff has provided an administratively feasible method of determining the class.

---

[13] The Plaintiff's Motion for Collective and Class Certification does not define the class period for which the Plaintiff seeks certification. However, the Plaintiff's Amended Complaint defines the class period as January 2, 2016, through January 1, 2018. [Doc. 22 at ¶ 63]. The Fourth Circuit observed that, although the Plaintiff's Amended Complaint defined the FLSA class period as beginning in 2015 and the breach of contract class period as beginning in 2016, that the Amended Complaint referred in multiple places to a "three-year period" preceding the filing of the Complaint. Conner, 22 F.4th at 418 n.4.The Fourth Circuit suggested that this reference to 2016 could be a typographical error. Id. However, because the statute of limitations for a willful FLSA violation is three years, 29 U.S.C. § 255(a), and the statute of limitations for a North Carolina state law claim for suits based against a "local government upon a contract" is two years, N.C. Gen. Stat. § 1-53(1) (2022), it appears that the Plaintiff intentionally limited the state-claim class in this manner.

### b. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Though 'no specified number is needed to maintain a class action, as a general guideline,' 'a class that encompasses fewer than 20 members will likely not be certified while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.'" In re Zetia (Ezemtimibe) Antitrust Litigation, 7 F.4th 227, 234 (4th Cir. 2021) (alterations omitted) (first quoting Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967); and then quoting 1 Newberg on Class Actions § 3:12 (5th ed. 2021)).

Here, the Plaintiff stated that "CCEMS employs approximately 69 '24 hours on-48 hours off' personnel" and that "[she] estimate[s] that CCEMS has employed an additional 50-75 '24 hours on-48 hours off' personnel during the three-year period preceding the filing of [her] Complaint." [Doc. 37: Conner Decl. at ¶ 13]. Accordingly, based on the Plaintiff's estimations, the class would exceed 100 members, more than double the threshold the Fourth Circuit noted would "raise[] a presumption of impracticability of joinder based on numbers alone." Cleveland County, however, argues that Plaintiff cannot rely only on her estimates because she "could have requested the

County's records to determine the number of putative class members, if any." [Doc. 75 at 18]. However, "[p]laintiff[s] need only make a reasonable estimate of the number of class members." Wiseman v. First Citizens Bank & Trust Co., 212 F.R.D. 482, 486 (W.D.N.C. 2003); see also Fitzgerald v. Schweiker, 538 F. Supp. 992, 1000 (D. Md. 1982) ("Plaintiffs' good faith estimate of the size of the class clearly is sufficient to establish numerosity."). Moreover, CCEMS Director Lord confirmed in his deposition that sixty-nine 24 on/48 off employees are employed at a given time, [Doc. 38-2 at 7], a number that itself would exceed the forty-member presumption threshold. Accordingly, the Court concludes that the Plaintiff has sufficiently demonstrated that the class of plaintiffs is so numerous that joinder would be impracticable, thereby satisfying the numerosity requirement.

### c.    Commonality

Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" EQT Prod. Co., 764 F.3d at 360 (alterations and emphasis in original) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350). "A single common question will suffice, but it must be of such a nature that its

36

determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (citation omitted) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350).

Here, the Plaintiff argues that the common question is: "Did the Cleveland County Ordinances contractually obligate Defendant to pay CCEMS 24 hours on – 48 hours off personnel their straight time (i.e. non-overtime wages in an equal amount to the annual salaries listed for their respective grades and steps, plus additional overtime compensation for hours worked in excess of 40 in a workweek." [Doc. 50 at 10]. Cleveland County, however, argues that, because the Ordinances do not "expressly promise specific annual compensation to any County employee," that determining what salary each employee was promised would require an individualized inquiry. [Doc. 75 at 20-22].

Ultimately, the crux of the commonality inquiry is whether the terms of the employment agreement between the putative class members and Cleveland County were common to the class or whether some other agreement existed between each individual putative member and Cleveland County that established their pay. If the Plaintiff has sufficiently demonstrated at this stage of the proceedings that the former is the case, then a common question of law—whether such terms were breached—

37

governs. See Sacred Heart Health Syss., Inc. v. Humana Mil. Healthcare Servs., Inc., 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

At this stage of the proceedings, the Court must rigorously analyze whether the Plaintiff has made a sufficient showing for class certification and need not rely on the Plaintiff's allegations but instead may "probe beyond the pleadings." However, even applying this heightened standard, the Court concludes the Plaintiff has sufficiently shown that there is a question of law or fact common to the class. The Plaintiff has testified that she had no written or oral agreement with the County other than the Ordinances. [Doc. 48-2: Conner Dep. Vol II at 3]. While Cleveland County disputes the Plaintiff's assertion, alluding to the existence of individual salary representations made to employees at some point during the employment negotiation process, it fails to cite any record evidence that supports its allegation.[14] [Doc. 75 at 5].

---

[14] Cleveland County cites the Plaintiff's own deposition to support the existence of individualized contract terms, arguing that the Plaintiff's testimony that she and other class members were "told they would receive a salary and they did not based on . . . the old pay scale plan of section 14" implies the existence of individual salary negotiations. [Doc 75 at 5; Doc. 48-1: Conner Dep. Vol. I at 5]. However, the County has failed to produce any contract that these individual negotiations produced, and the Plaintiff has testified that her only agreement with the County as to her salary was the implied agreement created by the Ordinances. [Doc. 48-2: Conner Dep. Vol. II at 2]. Accordingly,

Cleveland County has not forecasted any evidence that any contract existed with individual terms for each employee such that individualized inquiries would be required to litigate the breach of contract claim.[15] Accordingly, the Court concludes that there exists a question of law or fact common to the class, satisfying the commonality prong of the Rule 23 analysis.

### d.    Typicality

Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"

---

Cleveland County's attempt to read individualized negotiations into the use of the word "told" is not supported by the record evidence.

[15] Moreover, while Cleveland County now argues that the Ordinances do not expressly promise specific annual compensation to any county employee, [Doc. 75 at 20], its contention to the appellate court was not that the Ordinances did not create contractual obligations, but rather that they did not constitute the *entirety* of the terms between Cleveland County and 24 on/48 off employees. Specifically, Cleveland County stated that "Conner's implied contract—the County's ordinance and Section 14 Pay Plan— guaranteed her only $26,208 per year." Brief for Appellant at 11, Conner v. Cleveland Cnty., 22 F.4th 412 (4th Cir. 2022) (No. 19-2012), 2020 WL 241053, at *11. Accordingly, rather than arguing that unique employment agreements exist between individual putative members and the county, Cleveland County argued on appeal that documents common to all putative members—the Ordinances and the Section 14 Pay Plan—created implied contracts that would necessarily have common terms between all 24 on/48 off employees. Therefore, to the extent the distinction between the Plaintiff's argument (i.e., that the Ordinances alone govern the contractual employment relationships between the County and its 24 on/48 off employees) and Cleveland County's argument (i.e., that the Ordinances *and* the Section 14 Pay Plan govern the contractual relationship) constitutes a dispute regarding the manner of calculating any 24 on/48 off employee's pay, that dispute is common to all putative members.

39

Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006) (quoting

Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 340 (4th Cir.

1998)). This requirement tends to merge with the commonality requirement.

Id.

Here, Cleveland County's argument that the Plaintiff is not typical of

the class mirrors its argument that the Plaintiff does not satisfy the

commonality requirement. Essentially, Cleveland County argues that

because the employment relationship between the Plaintiff and Cleveland

County is governed not solely by the Ordinances but also by "individualized

representations made to her," she cannot be typical of the class because

she, like each putative member, has an individualized contract with the

County. [Doc. 75 at 22]. The Plaintiff, however, maintains that because the

terms of the contract were the same for all putative members, and because

Cleveland County allegedly breached those terms in the same way for all

putative members, her claim satisfies the typicality requirement. [Doc. 36 at

22].

The above analysis as to the commonality requirement also applies to

the typicality requirement. The Plaintiff has sufficiently shown that common

terms governed the employment relationship between Cleveland County and

all 24 on/48 off employees and has sufficiently shown that the alleged

40

breach, if proven, would be common to all class members. Accordingly, the Court concludes her claim is typical of the class.

### e. Adequacy of Representation

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This analysis is two-pronged: (1) that the plaintiff "possess the same interest and suffer the same injury as the class members" and that the plaintiff's interests are not antagonistic to the other members; and (2) that the plaintiff's counsel is "qualified, experienced and generally able to conduct the proposed litigation." Rehberg v. Flowers Baking Co. of Jamestown, LLC, No. 3:12-cv-00596-MOC-DSC, 2015 WL 1346125, at *11 (W.D.N.C. Mar. 24, 2015) (first quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997); and then quoting Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011)).

Here, the Plaintiff argues that her interests are identical to the interests of all other members as she, like all putative members, seeks reimbursement for wages that were allegedly underpaid and that her counsel is experienced and qualified to conduct this litigation. [Doc. 36 at 23]. Cleveland County does not dispute that the Plaintiff satisfies this requirement. As with the commonality and typicality analysis, the Court concludes the Plaintiff has

41

sufficiently shown she has the same interest as putative members, satisfying the first prong of the adequacy of representation analysis. The Court also concludes that the Plaintiff's counsel is qualified, experienced, and generally capable of conducting litigation. Accordingly, the Court concludes the Plaintiff has met the requirements of Rule 23(a).

### f. Rule 23(b)(3)

"[C]ertification under Rule 23(b)(3) is appropriate when all of the prerequisites of Rule 23(a) are satisfied and two other requirements are met. Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." EQT Prod. Co., 764 F.3d at 357 (citations omitted). While the predominance analysis is governed by the same analytical principals as the Rule 23(a) commonality analysis, the 23(b)(3) analysis is "more demanding." Id. (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013)). This is because "[t]he predominance inquiry focuses not only on the existence of common questions, but also how those questions relate to the controversy at the heart of the litigation." Id. at 366. "Even a plethora of identical practices will not satisfy the predominance requirement if the defendant['s] common conduct has little bearing on the central issue in the litigation." Id.

42

Here, the common questions in this case are at the heart of the breach of contract claim: (1) what compensation were 24 on/48 off employees owed under the terms of their contracts with Cleveland County? and (2) were they paid in accordance with their contracts? Cleveland County attempts to complicate this inquiry by arguing that an individual question exists as to one of the elements of the North Carolina breach of contract claim, namely the existence of damages resulting from the breach, because each class member will have different damage amounts. [Doc. 75 at 23]. Specifically, Cleveland County argues that the calculation of damages would be unique to each plaintiff because an employee's particular underpayment based on the alleged breach would vary based on numerous factors, including whether an employee received "longevity pay, vacation pay, and sick pay." [Id.]. Cleveland County's reliance on the differences in individual damages calculations is misplaced. While the individual damage amounts ultimately awarded to the class members if they are successful will differ because of individual factors, those factors have no bearing on the questions of *existence* of damages resulting from a breach. If Cleveland County contracted with 24 on/48 off employees to pay them their annual salary as set out in the Ordinances for non-overtime hours and then paid them less than that, then it breached the contract and the difference between

43

contracted-for and actual compensation constitutes damages resulting from that breach. Accordingly, the question at issue—whether the breach resulted in damages—is common to all class members.

In determining whether proceeding in a class action is superior to other available methods of litigation, courts consider, among other factors: concerns of judicial economy; the risk of inconsistent judgments against the defendants; the barriers to individual litigation faced by class members; the split of state and federal claims in a litigation; and whether there are alternative mechanisms to resolving the claims. See EQT Prod. Co., 764 F.3d at 371. Here, judicial economy weighs heavily in favor of proceeding as a class—the issue at the heart of this case is common to all class members and there is very little, if anything at all outside the issue of specific damage amounts, that will need to be resolved in a fact specific inquiry for individual plaintiffs. While the breach of contract claim is a state law claim, the issues central to its resolution mirror the FLSA claim, another factor weighing in favor of proceeding as a class. Accordingly, the Court concludes that proceeding as a class is superior to other methods of litigation. Therefore, the Plaintiff has sufficiently shown that class certification pursuant to Rule 23 is warranted.

**D.    Class Notice & Appointment as Class Counsel**

The Plaintiff also requests that the Court approve her proposed notice, authorize her to send potential opt-in members notice forms and reminders, order that Cleveland County post notice forms at CCEMS offices, appoint her counsel as class counsel, and set a forty-five-day period in which potential members can opt-in to the lawsuit. [Doc. 35]. Cleveland County requests that, in the event the Court conditionally certifies the collective action and certifies the class action, it be allowed to object to the proposed notice. [Doc. 75 at 7 n.4]. Cleveland County does not indicate any objection to the appointment of the Plaintiff's counsel as class counsel.

The Plaintiff's proposed notice is attached as an exhibit to her 2018 Motion for Collective and Class Certification. [Doc. 35-1]. The Court will order Cleveland County to submit objections to this proposed notice within fourteen days of the date of entry of this order. The Plaintiff will then have fourteen days following the filing of any objections by Cleveland County to respond to such objections. Accordingly, the Court will not yet authorize notice to the potential members. The Court will appoint the Plaintiff's counsel as class counsel.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that conditional certification of the Plaintiff's FLSA claim as a collective action is appropriate and that certification pursuant to Rule 23 of the Federal Rules of Civil Procedure is appropriate for the Plaintiff's state law breach of contract claim. The Court will conditionally certify as a collective action for the FLSA claim a class comprised of 24 on/48 off employees who were employed by Cleveland County anytime between January 2, 2015, and December 31, 2017. The Court will certify as a class action pursuant to Rule 23 a class comprised of 24 on/48 off employees who were employed by Cleveland County anytime between January 2, 2016, and December 31, 2017. The Court will order Cleveland County to submit objections to the proposed notice within the time frame as set out above.

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Revive Motion for Collective and Class Certification [Doc. 72] is **GRANTED**; the Plaintiff's Motion to Certify as Collective and Class Action [Doc. 35] is **GRANTED**; and the Defendant's Motion to Dismiss [Doc. 40] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's counsel, Philip J. Gibbons, Jr., is appointed as counsel for the class.

**IT IS FURTHER ORDERED** that within fourteen days of the entry of this order, the Defendant shall submit objections to the Plaintiff's proposed class and collective action notice [Doc. 35-1] and the Plaintiff will have fourteen days after the filing of any such objections to file a response to those objections.

**IT IS SO ORDERED.**

Signed: April 21, 2023

Martin Reidinger
Chief United States District Judge

47